UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHA-HEED RAHMAN,

                                    Plaintiff,

v.                                                              9:10-CV-1496

                                                              (BKS/TWD)

S.A. CONNELL, Superintendent; JOSLYN, Deputy
Superintendent of Programs,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

SHA-HEED RAHMAN, 90-A-0409
Plaintiff *pro se*
Otisville Correctional Facility
Box 8
Otisville, New York 10963

HON. ERIC T. SCHNEIDERMAN            TIFFINAY M. RUTNIK, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Defendants
Attorney General of the State of New York
The Capitol
Albany, New York 12224


THÉRÈSE WILEY DANCKS, United States Magistrate Judge


## REPORT-RECOMMENDATION AND ORDER

        This matter was referred to the undersigned for report and recommendation by the Honorable

Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District

of New York Local Rule 72.3.  Currently pending before the Court is Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 95.)  For the following

reasons, I recommend that the Court grant Defendants' motion for summary judgment.

## I.    BACKGROUND

Plaintiff alleges that Defendants Connell, retired Superintendent at Oneida Correctional Facility ("Oneida"), and Joslyn, former Deputy Superintendent of programs at Oneida, violated Plaintiff's right to exercise his religion by denying him access to the sink for pre-prayer ablution. (Dkt. No. 56 at 11-12.)  Specifically, Plaintiff alleges that he complained to the Sunni Islamic Chaplain about a policy implemented at Oneida prohibiting inmates from using the bathroom sink before six in the morning, and that the Chaplain informed Plaintiff that he would convey Plaintiff's complaint to Defendant Joslyn.  *Id.* at 7.  The complaint further alleges that Defendant Connell created the policy.  *Id.* at 11.  Plaintiff also alleges that Defendant Joslyn

> [k]new of the policy that denied Muslims from using the sink the morning.  This practice prevented plaintiff from making wudu ([a]blution).  I complained about this practice to Superintendent Connell who referred my letter to [Defendant Joslyn] who did nothing to change that policy.  I was not allowed to make my morning [p]rayer.

*Id.* at 12.

Defendants Connell and Joslyn now move for summary judgment on the grounds that they did not personally create or endorse the policy and Plaintiff failed to properly exhaust his administrative remedies with respect to this claim.  (Dkt. No. 95.)  Plaintiff has opposed the motion.  (Dkt. No. 97.) Defendants have filed a reply.  (Dkt. No. 99.)  The undersigned has addressed only the exhaustion argument, as it is dispositive.

## II.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial

burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III. ANALYSIS

Defendants argue that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 95-1 at 5-11.[2]) Defendants are correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."

---

[1]  A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

[2]  Citations to page numbers in Court documents refer to the page numbers assigned by the Court's electronic filing system.

*Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances.  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence.  *Id.* at § 701.5(a) (2010).  A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* at 701.5(b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing.  *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. at 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. at § 701.5(c)(3)(ii).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision.  *Id*. at 701.5(d)(1)(I).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*.  at 701.5(d)(3)(ii).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

Here, it is undisputed that Plaintiff failed to exhaust the DOCCS grievance process. Jeffrey Hale, Assistant Director of the IGP, declares that Plaintiff filed a grievance which was fully exhausted, but that grievance made no claim that he was denied the use of the sink to perform ablution. (Dkt. No. 95-8 at 3-4.) Joseph Cieslak, Inmate Grievance Program Supervisor, supports this assertion by noting that the records maintained by the Grievance Office at Oneida confirm that Plaintiff filed only two grievances while housed there, neither of which concerned sink use. (Dkt. No. 95-4 at 2, 5.) The only written complaint by Plaintiff that addressed the sink issue was made outside the DOCCS grievance process. (Dkt. No. 95-1 at 4.) Specifically, the record shows that Plaintiff wrote a letter to then-Commissioner of DOCCS, Brian Fischer, complaining that he was prevented from practicing his faith by policies restricting his access to water from the bathroom. (Dkt. No. 95-10 at 171-72.) This letter did not satisfy the exhaustion requirement. *Harrison v. Goord*, No. 07 Civ. 1806 (HB), 2009 U.S. Dist. LEXIS 48478, at *27-29, 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (collecting cases).[3] Therefore, Plaintiff failed to exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the review. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[4] First, "the

---

[3]     The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[4]     The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* (citation omitted). Here, administrative remedies were available to the prisoner. This is evidenced by the fact that Plaintiff previously filed two grievances that were subsequently denied under the DOCCS three-step grievance process. (Dkt. No. 95-8 at 6-36.)

Second, if those remedies were available:

> the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense.

*Hemphill*, 380 F.3d at 686 (citations omitted). Here, Defendants preserved the exhaustion defense by asserting it in their answer. (Dkt. No. 74 ¶ 19; *Jones*, 549 U.S. at 216; *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010)). Further, Plaintiff does not claim that any named Defendant inhibited him from filing grievances regarding the sink issue. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-64 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison). Therefore, Defendants are not estopped from raising Plaintiff's failure to exhaust as a defense.

Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Hemphill*, 380 F.3d at 686 (citations and internal quotations omitted). Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano*

6

*v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).

Here, Plaintiff has not presented special circumstances justifying his failure to exhaust administrative remedies. Plaintiff contends that he attempted to file a grievance regarding the sink issue. (Dkt. Nos. 97 at 1-2.) Specifically, Plaintiff claims that "the grievance supervisor failed to file [his] grievance on the sink issue," and Plaintiff states that he notified the Central Office of this fact. *Id.* Plaintiff also alleges that "it was not beyond" Joseph Cieslak, inmate Grievance Program Supervisor, "to destroy grievances and claim he never got them." *Id.* at 1. In sum, Plaintiff alleges that he "filed grievances that did not get filed" regarding the sink issue. *Id.* at 2, 6.

DOCCS rules and regulations, however, direct that inmates timely appeal to the next step a facility's failure to respond to a grievance. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) ("Matters not decided within the time limits may be appealed to the next step."). The fact that a prisoner believes his grievances were destroyed or not filed does not relieve him of this obligation. *See Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that . . . grievances were misplaced or destroyed . . . ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Midalgo v. Bass*, No. 9:03-CV-1128 (NAM/RFT), 2006 U.S. Dist. LEXIS 98871, at *16-17, 2006 WL 2795332, at *6 (N.D.N.Y. Mar. 27, 2006); *Gill v. Frawley*, No. 9:02-CV-1380, 2006 U.S. Dist. LEXIS 101694, at *44-54, 2006 WL 1742738, at *11 (N.D.N.Y. May 9, 2006) (Lowe, Mag. J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a *reasonable* effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance.") (emphasis in original).

Plaintiff has failed to show that he properly appealed the alleged misfiling or destruction of his grievances. Although he claims he notified "the Central Office" of this fact, he did not follow the proper appeal procedure as required by the IGP. Plaintiff also does not claim he did not know or understand the IGP appeal process. Furthermore, he has complied with the DOCCS grievance process in the past. (Dkt. No. 95-8 at 6-36.) Finally, the records maintained by the Grievance Office at Oneida only note that Plaintiff filed two grievances while housed there, neither of which concerned the sink policy. (Dkt. No. 95-4 at 5.) These aforementioned facts demonstrate that Plaintiff has failed to fully exhaust his administrative remedies and that his failure to do so should not be excused. Accordingly, I recommend that the Court grant Defendants' motion for summary judgment.

## IV.    CONCLUSION

Plaintiff did not timely appeal the alleged misfiling or destruction of grievances he attempted to file regarding the sink issue per DOCCS rules and regulations. There are also no "special circumstances" that would excuse his failure to do so. Therefore, he failed to exhaust his administrative remedies. Accordingly, the Court should grant Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 95) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Harrison v. Goord*, No. 07 Civ. 1806 (HB), 2009 U.S. Dist. LEXIS 48478, 2009 WL 1605770 (S.D.N.Y. June 9, 2009); *Midalgo v. Bass*, No. 9:03-CV-1128 (NAM/RFT), 2006 U.S. Dist. LEXIS 98871, 2006 WL 2795332 (N.D.N.Y. Mar. 27, 2006); and *Gill v. Frawley*, No. 9:02-CV-1380, 2006 U.S. Dist. LEXIS 101694, 2006 WL

1742738 (N.D.N.Y. May 9, 2006).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: July 14, 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2006 WL 1742738
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony G. GILL, Plaintiff,
v.
Kathleen FRAWLEY, R.N., Elmira C.F.;
Charlie Peet, Correction Officer, Elmira
C.F.; and S. Graubard, Inmate Grievance
Program Supervisor, Elmira C.F., Defendants.

No. 9:02-CV-1380. | June 22, 2006.

**Attorneys and Law Firms**

Anthony G. Gill, Comstock, NY, Plaintiff, Pro Se.

Eliot L. Spitzer, Attorney General for the State of New York,
Senta B. Siuda, Esq., Assistant Attorney General, Syracuse,
NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge.

**\*1** This *pro se* civil rights complaint pursuant to 42 U.S.C. §
1983 was referred to the Honorable George H. Lowe, United
States Magistrate Judge, for a Report-Recommendation
pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y.
72.3(c).

The Report-Recommendation dated May 9, 2006
recommended that Defendants' motion for summary
judgment be granted. The Plaintiff filed objections to
the Report-Recommendation, essentially raising the same
arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a "de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made." See 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered
the issues raised in Plaintiff's objections, this Court has
determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants' motion for summary judgment
is **GRANTED** and Plaintiff's complaint is **DISMISSED** in
its entirety. The Clerk of the Court shall close the file in this
matter.

IT IS SO ORDERED.

GEORGE H. LOWE, Magistrate Judge.

***REPORT-RECOMMENDATION***

This matter has been referred to me for Report and
Recommendation by the Honorable Thomas J. McAvoy,
Senior United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and Local Rule N.D.N.Y. 72.3(c). In this *pro se*
civil rights complaint brought under 42 U.S.C. § 1983, Inmate
Anthony G. Gill ("Plaintiff") alleges that Elmira Correctional
Facility ("Elmira C.F.") Nurse Kathleen Frawley, Elmira
C.F. Correction Officer ("C.O.") Charlie Peet, and Elmira
C.F. Inmate Grievance Program Supervisor Sheryl Graubard
(collectively "Defendants") violated his rights under the First,
Eighth, and Fourteenth Amendments when (1) on April 23,
2002, Defendants Frawley and Peet recklessly and without
cause confiscated Plaintiff's medically authorized custom-
made arch supports with metal inserts, and subsequently
lost or destroyed those arch supports, and (2) at some point
between April 29, 2002, and July 12, 2002, Defendant
Graubard failed to file, process and hold a hearing on
Plaintiff's April 29, 2002, grievance against Defendants
Frawley and Peet regarding those arch supports. (Dkt. No. 1.)

Currently before the Court is Defendants' motion for
summary judgment. (Dkt. No. 55.) Generally, Defendants'
motion raises the following four issues: (1) whether Plaintiff
has failed to establish (or even state) a claim against
Defendant Graubard under the First and/or Fourteenth
Amendments for improperly handling his grievance; (2)
whether Plaintiff has failed to establish (or even state)
a claim against Defendants Frawley and Peet under the
Eighth Amendment for deliberate indifference to a serious

medical need; (3) whether Plaintiff has failed to exhaust his administrative remedies with regard to his claim under the Eighth Amendment that Defendants Frawley and Peet improperly confiscated his arch supports; and (4) whether Defendants are entitled to qualified immunity. (Dkt. No. 55, Part 6 [Defs.' Mem. of Law].)

**\*2** For the reasons discussed below, I answer the first two questions in the affirmative (and thus do not have to reach the second two questions). As a result, I recommend that Defendants' motion for summary judgment be granted.

## I. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material [1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."Fed.R.Civ.P. 56(e); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986). The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 477 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)."A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Ross v. McGinnis,* 00 Civ. 0275, 2004 WL 1125177, \*8 (W .D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court must view a *pro se* plaintiff's pleadings and papers, and a civil rights plaintiff's pleadings and papers. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989) (*pro se* civil

rights action); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998) (*pro se* civil rights action), *aff'd in part, vacated in part on other grounds,*205 F.3d 1324 (2d Cir.2000) (unpublished decision). For example, where a civil rights plaintiff is proceeding *pro se,* and the defendant has filed a dispositive motion, the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest. *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir.2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (motion for summary judgment in civil rights case).

**\*3** However, although "[t]he work product of *pro se* litigants should be generously and liberally construed, ... [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."*Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at \*5 (S.D.N.Y. Dec. 5, 1994). In other words, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment ."*Bussa v. Aitalia Line Aeree Italiane S.p.A.,* 02-CV10296, 2004 WL 1637014, at \*4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord, Durran v. Selsky,* 251 F.Supp.2d 1208, 1211 (W.D.N.Y.2003) [citations omitted].

Moreover, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude."*Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at \*19 & n. 10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 lawsuits in the Northern District alone); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at \*7 & n. 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 lawsuits in Northern District alone). [2] I note that, in such cases, the overly litigious inmate is not subjected to a heightened pleading requirement, only denied the leniency normally afforded to *pro se* litigants and civil rights litigants.

Here, the circumstances warrant denying Plaintiff the leniency normally afforded to *pro se* civil rights litigants, for the reasons stated by Defendants in their Memorandum of Law. (Dkt. No. 55, Part 6, at 2-4 [Defs.' Mem. of Law].) Most notably, the Second Circuit has recognized Plaintiff as "no stranger either to the grievance system or to the federal

courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). Furthermore, this Court recently denied Plaintiff the leniency normally afforded to *pro se* civil rights litigants. *Gill v. Riddick,* 03-CV-1436, 2005 U.S. Dist. LEXIS 5374, at *7 & note 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (listing 20 cases filed by Mr. Gill in this District alone). I would add only that, in addition to the 20 or more cases that Plaintiff has filed in this District, Plaintiff has filed at least five other cases in the Southern District of New York. [3]

Based on a cursory review of these cases, it appears that Plaintiff currently has two "strikes" pending against him for purposes of 28 U.S.C. § 1915(g)'s "three strikes rule." *See Gill v. DeFrank,* 8 Fed. Appx. 35 (2d Cir.2001) (affirming district court's grant of summary judgment to defendants); *Gill v. Pflueger,* 02-CV-0130, Report-Recommendation (N.D.N.Y. Nov. 14, 2002) (DiBianco, M.J.) (recommending that district judge grant defendants' motion to dismiss for failure to state a claim), *adopted by* Order (N.D.N.Y. Jan. 30, 2003) (Hurd, J.).

## II. STATEMENT OF MATERIAL FACTS

**\*4** The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record [4] and are not specifically controverted by the non-movant. [5] A district court has no duty to perform an independent review of the record to find proof of a factual dispute. [6] In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit. [7]

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge." [8] An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay. [9] In addition, such an affidavit (or verified complaint) must not be conclusory. [10] An affidavit (or verified complaint) is conclusory if, for example, its assertions lack any supporting evidence or are too general. [11] Moreover, "[a]n affidavit must not present legal arguments." [12]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1)

"largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." [13]

While I apply these legal principles below in the Analysis section of this Report-Recommendation (to the extent necessary), I pause to make three general observations. First, Defendants' Rule 7 .1 Statement is very brief. (Dkt. No. 55, Part 3.) Second, Plaintiff's Rule 7.1 Response violates Local Rule 7.1(a)(3) by not mirroring Defendants' Rule 7.1 Statement in matching numbered paragraphs, and by often not setting forth a specific citation to the record where an (alleged) factual issue arises. (Dkt. No. 58 [attaching document entitled "Plaintiff's Affirmation / 7.1(e) Statement"].) Third, although Plaintiff's Complaint is verified, several paragraphs of that Verified Complaint are made on "information and belief." (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 4, 5, 21, 27, & n. 1, 3.)

## III. ANALYSIS

### A. Whether Plaintiff Has Failed to Establish (or Even State) a Claim Against Defendant Graubard Under the First and/or Fourteenth Amendments for Improperly Handling His Grievance

Plaintiff asserts the following allegations against Defendant Graubard: (1) that, during the days and weeks following the filing of Plaintiff's grievance against Defendants Frawley and Peet on April 29, 2002 (regarding their confiscation of Plaintiff's arch supports on April 23, 2002), Defendant Graubard failed to "process," and hold a hearing on, that grievance, and (2) that, at some point, between April 29, 2002, and July 12, 2002 (when Defendant Graubard wrote a memorandum to Plaintiff stating that she could find no such grievance at Elmira C.F.), Defendant Graubard destroyed or lost that grievance, claiming on July 12, 2002 that it had never been filed. [14] Plaintiff alleges that, through these actions, Defendant Graubard "violated plaintiff ['s] [rights under the] 1st and 14th Amendment of the U.S. Constitution [and] DOCS' Directive 4040." [15]

**\*5** Defendants argue that Plaintiff has failed to establish (or even state) a claim against Defendant Graubard under the First or Fourteenth Amendments with regard to the handling of Plaintiff's (alleged) April 23, 2002 grievance, because, even if Defendant Graubard failed to comply with New York State grievance procedures (as set forth in DOCS Directive

No. 4040), such a failure would not constitute a violation of the First or Fourteenth Amendments. [16]

Plaintiff fails to respond to this argument. [17] Defendants are correct to the extent that they argue that, by failing to respond to Defendants' argument, Plaintiff may be deemed to have "consented" to that argument under Local Rule of Practice 7.1(b)(3). [18] However, Defendants are incorrect to the extent they argue that this failure by Plaintiff *automatically* results in the dismissal of Plaintiff's First and Fourteenth Amendment claims against Defendant Graubard with regard to the handling of Plaintiff's (alleged) April 23, 2002 grievance. [19] As a threshold matter, of course, the Court must always determine whether a movant's legal argument has merit. [20] As a result, I must pass on the merits of Defendants' argument.

I agree with Defendants that the manner and timing in which grievances are *investigated* and *decided* (e.g., as set forth in DOCS Directive No. 4040) do not create a protected liberty interest. [21] (Indeed, I would add that the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [22] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [23] ) Clearly, however, the right to *file* a prison grievance is protected by the First and Fourteenth Amendments . [24] Here, part of Plaintiff's claim against Defendant Graubard is that she interfered with Plaintiff's properly filed grievance, losing or destroying that grievance (and, in effect, rendering that grievance "not filed").

However, Plaintiff's claim against Defendant Graubard for interfering with Plaintiff's right to file a grievance still fails because, to succeed on such a claim (whether it is asserted under the First or Fourteenth Amendments), Plaintiff must allege and establish that Defendant Graubard acted intentionally or deliberately; [25] and, here, no such allegation or evidence exists. Rather, *at most,* the evidence might indicate some neglect on the part of Defendant Graubard. However, negligence is not enough to give rise to an action under Section 1983. [26]

For example, noticeably absent from this case is any evidence (or even an allegation) that, during the expiration of the 14-day time period in which Plaintiff had to file his grievance, (1) Defendant Graubard instructed Inmate Grievance Sergeant Volker or an Inmate Grievance Clerk to represent to Plaintiff that his grievance had been received and filed, and that a hearing was imminent, or (2) Defendant Graubard even knew that those two individuals had (allegedly) been making such representations. Plaintiff does not even expressly and non-conclusively allege that Defendant Graubard was *aware* that Plaintiff had filed a grievance on April 29, 2002.

**\*6** The closest Plaintiff comes to alleging any personal involvement of Defendant Graubard in the apparent misunderstanding or mistake following the apparent filing of Plaintiff's grievance on April 29, 2002 is when Plaintiff alleges, in an attachment to his Complaint, that (1) Defendant Grabuard "regularly sent" the Inmate Grievance Clerk in question to Plaintiff's cell for an "interview," and (2) on May 28, 2002, Plaintiff wrote to Defendant Graubard inquiring about the status of his grievance. [27] However, these allegations are not verified. I am not inclined to treat them as verified by deeming them incorporated by reference in the Verified Complaint, given Plaintiff's loss of special status as a *pro se* civil rights litigant (due to his litigiousness). Even if I were so inclined, the allegations would not create an issue of fact. Plaintiff does not allege that the reason Defendant Graubard (allegedly) "regularly sent" the Inmate Grievance Clerk in question to Plaintiff's cell to interview, or be interviewed by, Plaintiff was to talk to Plaintiff *about Plaintiff's April 29, 2002 grievance* (as opposed to some other subject). [28] Furthermore, Plaintiff does not attach a copy of his alleged May 28, 2002 letter to Defendant Graubard, or even allege that Defendant Graubard even read the letter (indeed, Plaintiff admits that Defendant Graubard did not respond to the letter). [29]

As a result, I recommend that the Court dismiss Plaintiff's First Amendment claim and Fourteenth Amendment claim against Defendant Graubard.

**B. Whether Plaintiff Has Failed to Establish (or Even State) a Claim Against Defendants Frawley and Peet under the Eighth Amendment for Deliberate Indifference to a Serious Medical Need**

Defendants correctly recite the legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment. Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a *sufficiently serious* medical need; and (2) that Defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble,*

429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Defendants argue that Plaintiff's claim for deliberate indifference to his "deformity in both feet" should be dismissed because Plaintiff has failed to establish either that (1) his deformity constituted a *sufficiently serious* medical condition for purposes of the Eighth Amendment, or (2) any Defendant exhibited the sort of reckless disregard necessary to show *deliberate indifference* to that serious medical condition for purposes of the Eighth Amendment.[30]

### 1. Serious Medical Need

I agree with Defendants that Plaintiff's medical condition does not constitute a serious medical need for purposes of the Eighth Amendment, although I reach this conclusion based on somewhat different reasons than those offered by Defendants.

Plaintiff alleges (and the evidence indicates) that, at the time of the alleged deprivation in question, he had (1) a birth defect consisting of "deformity in both feet" which resulted in, at various times, prescriptions for orthopedic footwear (e.g., custom-made arch supports, a/k/a "orthoses" or "orthotics," with extra-deep boots), and (2) a bulging disc in his spine ("spondylosis"), arthritis in both knees, and lower back pain.[31]

*7 After carefully considering the relevant case law, I conclude that Plaintiff's medical conditions, even when considered together, do not constitute a sufficiently serious medical condition for purposes of the Eighth Amendment because they do not constitute a "condition of urgency, one that may produce death, degeneration, or extreme pain."*Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996). Specifically, in reaching my conclusion, I rely on numerous cases that are factually analogous to the present case.[32] Plaintiff does not, in his response papers, offer any case law or evidence that leads me to another conclusion.[33]

I note that my conclusion that Plaintiff's medical condition is not sufficiently serious for purposes of the Eighth Amendment is further supported by certain of Plaintiff's deposition and trial testimony submitted by Defendants-specifically, that (1) on June 4, 2003, Plaintiff testified that he "never" uses a wheelchair,[34] and (2) on April 29, 2003, and June 4, 2003, Plaintiff testified that he walks on a treadmill and does squats (among other things) for exercise.[35]

However, I also note that I do not rely on certain other deposition testimony offered by Defendants, in which (1) Plaintiff admits that he played football, tennis and baseball in high school,[36] and (2) in listing his physical disabilities on June 4, 2003, he included several conditions (e.g., a bulging disc or spondylosis) but not any condition regarding his feet.[37] The materiality of the first piece of testimony appears suspect, in my opinion, given that Plaintiff was 47 years of age at the time of the alleged deprivation-presumably about 30 years after he apparently played sports in high school. Also appearing suspect, in my opinion, is the materiality of the second piece of testimony.[38] The proffered materiality of this testimony appears to be that it supports the conclusion that Plaintiff's foot condition was not a "disabling medical condition."[39] However, I do not understand how that issue (regarding whether Plaintiff's foot condition was "disabling") relates to the issue at hand in this litigation (regarding whether Plaintiff's condition was "sufficiently serious" for purposes of the Eighth Amendment). In any event, it appears beyond reasonable dispute that Plaintiff has adduced at least *some* evidence that he had a foot deformity at the time in question (although that deformity does not rise to the level of a sufficiently serious medical condition for purposes of the Eighth Amendment).

Because I find that Plaintiff's medical condition is not sufficiently serious for purposes of the Eighth Amendment, I need not reach Defendants' alternative argument that Plaintiff has failed to establish deliberate indifference. However, for the sake of thoroughness, I will briefly address that argument.

### 2. Deliberate Indifference

I find that, even if Plaintiff's medical condition were sufficiently serious, Plaintiff has adduced no evidence establishing that Defendants Frawley or Peet acted with deliberate indifference when, on April 23, 2002, they confiscated Plaintiff's arch supports and subsequently refused to return them.[40] I reach this conclusion for the same reasons as advanced by Defendants in their motion papers.[41]

*8 In particular, I note three facts. First, the confiscation of Plaintiff's arch supports by Defendants Frawley and Peet was not wholly arbitrary but apparently premised on a legitimate security concern-(1) the arch supports, which contained metal inserts, could be used to manufacture a shank or weapon,[42] (2) Defendant Peet had come to understand

that, while incarcerated, Plaintiff had been convicted of possessing a weapon and/or committing an assault, [43] and (3) Defendant Frawley could find no indication in Plaintiff's medical records that he needed arch supports with *metal* inserts (as opposed to arch supports with plastic inserts). [44] Second, Plaintiff was seen by medical professionals for various reasons at least eight times over the six weeks following the confiscation. [45] For example, on June 3, 2002, when Plaintiff complained to medical professionals of pain, he was excused from school and work, was allowed to eat in his cell, and was permitted to walk with a cane. [46] Third, by at least May 21, 2002, Plaintiff was permitted to use another pair of custom-made arch supports, which were already in his possession (i.e., ones with plastic inserts); [47] and by July 1, 2002, Plaintiff was provided over-the-counter arch supports (as opposed to custom-made arch supports). [48]

Under the circumstances, *at most,* the evidence indicates that there may have been a hint of negligence on the part of Defendants Frawley and/or Peet. However, even if true, such negligence would not be enough to make Defendants Frawley or Peet liable to Plaintiff under the Eighth Amendment. [49]

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendants Frawley and Peet.

### C. Whether Plaintiff Has Failed to Exhaust His Administrative Remedies with Regard to His Claim that Defendants Frawley and Peet Improperly Confiscated His Arch Supports

In the alternative, Defendants argue that Plaintiff's claim against Defendants Frawley and Peet should be dismissed because Plaintiff did not exhaust his available administrative remedies with regard to his claim that Defendants Frawley and Peet improperly confiscated his arch supports. [50] Because I have already concluded that the Court should dismiss Plaintiff's claim against Defendants Frawley and Peet (*see, supra,* Part III.B.), I need not reach this argument. However, in the interest of thoroughness, I will do so.

Defendants contend that Plaintiff never filed a grievance with regard to this claim. In support of this argument, they offer an unlabelled, unsigned two-page document (presumably a computer print out) listing 26 grievances filed by Plaintiff between March 11, 2002, and November 21, 2002, but listing no grievance filed by Plaintiff regarding any confiscation of

his arch supports. [51] Defendants further argue that Plaintiff has adduced no evidence (only an "unsupported allegation") that he filed a grievance with regard to that improper confiscation. [52]

**\*9** With some reluctance, I must disagree with Defendants. It is true that Plaintiff's opposition papers are woefully inadequate, as Defendants point out in their reply papers. [53] It is further true that the Court has no duty to conduct an independent review of the record to find proof of a factual dispute. However, the Court certainly retains the discretion to conduct such an independent review. I believe that this discretion is no more appropriately exercised than when, as here, the factual dispute is rather glaring.

Specifically, I cannot help but notice that Plaintiff's *Verified* Complaint specifically alleges that (1) "[o]n or about April 29, 2002, plaintiff filed an institutional grievance for the return of his medical arch supports," (2) "[u]pon filing this grievance against defendants Frawley and Peet, plaintiff inquired countless times [of Inmate Grievance Sergeant Volker and an Inmate Grievance Clerk regarding] the status of this grievance, wherein plaintiff was informed by both [the Sergeant and the Clerk that] the grievance was received, filed and an upcoming hearing would be held," and (3) "on or about July 12, 2002, ... defendant [Graubard] informed plaintiff she was unable to find plaintiff's grievance regarding Nurse Frawley['s] confiscation of plaintiff's arch supports." [54]

Verified allegations such as these constitute *sworn assertions* (much like those contained in an affidavit), and may be used to defeat a motion for summary judgment. [55] Here, the sworn assertions in question appear to be based on personal knowledge, and are sufficiently specific-providing dates, identities of persons, and subject matter of conversations. [56] I note that the representations allegedly made to Plaintiff about the status of his grievance (i.e., that the grievance had been received and filed, and that an upcoming hearing would be held) would not be hearsay to the extent they were offered for a purpose other than to show the truth of the matters asserted (e.g., to show the reasonableness of Plaintiff's reliance on those representations, or to explain why he did not attempt to file another grievance within the 14-day deadline for such grievances).

Furthermore, Plaintiff attached to his Verified Complaint (1) a copy of a July 12, 2002, communication from Defendant Graubard, stating, "[w]e have been unable to find any

grievance from you concerning Nurse Frawley confiscating your arch supports," and (2) a copy of what Plaintiff claims is the grievance he filed on April 29, 2002. [57] I note that Plaintiff offered duplicate copies of these two documents in his papers in opposition to Defendants' motion. [58] Under the circumstances, I simply cannot find that Plaintiff has adduced no evidence that he exhausted his administrative remedies with respect to his grievance that Defendants Frawley and Peet improperly confiscated his arch supports.

This finding of a factual dispute is not inconsistent with Local Rule 7.1(a)(3), which states that facts set forth in a defendant's Rule 7.1 Statement "shall be deemed admitted" unless specifically controverted by the opposing party. That Local Rule does not require an opposing party to "specifically controvert" defendant's factual assertions *through the use of a Rule 7.1 Response.* Such an approach is, without doubt, the preferred method of creating a factual dispute; and (as indicated above) the Court has no *duty* to go beyond an opposing party's Rule 7.1 Response to find proof of a factual dispute. However, the Court has the *discretion* to go beyond an opposing party's Rule 7.1 Response to find proof of a factual dispute; and Local Rule 7.1 does not deprive the Court of that discretion. [59] I am mindful that Rule 56(e) expressly provides that, "[i]f the adverse party does not ... respond [with affidavits or other papers setting forth specific facts showing that there is a genuine issue for trial], summary judgment, *if appropriate,* shall be entered against the adverse party." [60] I simply cannot find it *appropriate* to grant summary judgment to Defendants on the basis of a failure to exhaust, where conspicuous evidence exists sufficient to create a factual dispute on the issue. [61]

**\*10** Furthermore, my treatment of Plaintiff's verified allegations as sworn assertions is not inconsistent with my finding that Plaintiff, due to his litigiousness, does not deserve the special solicitude normally afforded to *pro se* civil rights litigants. The rule that verified complaints shall be treated as affidavits for purposes of summary judgment motions has nothing to do with a non-movant's status as a *pro se* litigant or as a civil rights litigant. [62]

Finally, I will analyze Defendants' lack-of-evidence argument in the context of the Second Circuit's three-part test for exhaustion. The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison

conditions under § 1983... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [63] The Department of Correctional Services ("DOCS") has available a well-established three-step grievance program:

> First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.
>
> *White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at \*6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7). Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [64]

However, the Second Circuit has recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

**1. Availability of Administrative Remedies**

**\*11** "When an inmate's reasonable attempts to exhaust available administrative remedies are impeded by a correctional officer, the remedy may be deemed unavailable, thereby excusing the inmate from technically exhausting his remedies." *Veloz v. New York,* 339 F.Supp.2d 505, 515-516 (S.D.N.Y.2004) [citations omitted]. [65]  Some courts have suggested that an inmate has exercised a *reasonable* effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official. [66] However, other courts have indicated that an inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a *reasonable* effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance. [67]

Of course, here, Plaintiff alleges (and introduces at least some evidence indicating) that he made *more* than simply an initial effort to file a grievance about the (alleged) confiscation of his arch supports by Defendants Frawley and Peet. For example, he also alleges (and introduces at least some evidence indicating) that (1) in the days and weeks following April 29, 2002, he sought and received assurances from two corrections officers (other than Defendant Graubard) that his grievance had been received and filed, and that a hearing was imminent, (2) after being transferred to another prison, he twice wrote to Defendant Graubard regarding the issue, and was advised (more than two months after the events in question) that Defendant Graubard was unable to find Plaintiff's grievance, and (3) on August 6, 2002, Plaintiff filed a grievance containing an implicit request for an exception to the 14-day filing requirement, which request was subsequently either denied or not addressed by the Mohawk C.F. Superintendent and CORC. [68]

Under the circumstances, I find that Plaintiff has exercised a reasonable effort to exhaust his administrative remedies, and that at least a question of fact exists about whether those efforts were impeded by correctional officers (other than Defendant Graubard) sufficient to render Plaintiff's administrative remedies unavailable under the circumstances. I believe that my finding is supported by this Court's recent decision in *Hoover v. Hardman,* 99-CV-1855, 2005 WL 1949890 (N.D.N.Y. Aug. 15, 2005) (Scullin, C.J.).

In *Hoover,* this Court held that an inmate had created an issue of fact on the issue of availability of administrative remedies when he argued that his grievances had been "lost in the system," and he supported that argument by adducing (1) sworn testimony that the prison's Inmate Grievance Review Committee had not been operating adequately at the time in question, and (2) evidence that he had submitted a September 27, 1999, grievance for filing but that the grievance had never in fact been filed or investigated. *Hoover v. Hardman,* 99-CV-1855, Report-Recommendation, at 10-13 (N.D.N.Y. Nov. 11, 2004) (Lowe, M.J.), *adopted,* 2005 WL 1949890, at *3 (N.D.N.Y. Aug. 15, 2005) (Scullin, C.J.). [69]

**\*12**  In reaching my conclusion, I respectfully reject Defendants' argument that "Plaintiff [has] admit[ted] the availability of an administrative grievance process in his Complaint." [70] Defendants are correct insofar as they point out that, in his Verified Complaint, Plaintiff answered "Yes" to the questions "Is there a prisoner grievance procedure at this facility?" and "[D]id you present the facts relating to your complaint in this grievance program." [71] However, I do not see how these two verified allegations are inconsistent with Plaintiff's other verified allegations that (1) he filed a grievance on or about April 29, 2002, (2) he was subsequently assured that grievance had been filed, and (3) he was subsequently informed that no record existed of the grievance having been filed. [72] In any event, even if Plaintiff's two verified allegations in Paragraph 4 were inconsistent with his other verified allegations, that inconsistency, under the circumstances, would merely create an issue of fact for a jury.

For these reasons, I would find that Plaintiff has created an issue of fact with regard to whether the administrative remedies (allegedly) not pursued by him were in fact "available" to him.

### 2. Estoppel

Because of my finding above in Part III. C.1., I need not reach the issue of whether Defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether Defendants' own actions inhibiting Plaintiff's exhaustion of remedies may estop one or more of the Defendants from raising Plaintiff's failure to exhaust as a defense. However, I note that, if I were to reach this issue, I would find that Defendants Frawley and Peet would not be estopped from asserting this defense.

Specifically, Defendants Frawley and Peet have preserved their affirmative defense of non-exhaustion by raising it in their Answer. [73] Moreover, no evidence exists that either

Defendant Frawley or Defendant Peet is estopped from raising this defense because of his or her actions inhibiting Plaintiff's exhaustion of remedies. Indeed, it was Inmate Grievance Sergeant Volker and an Inmate Grievance Clerk (and not either Defendant Frawley or Defendant Peet) who allegedly represented to Plaintiff that the grievance had been filed; it was Defendant Graubard (and not either Defendant Frawley or Defendant Peet) who allegedly failed to process (or lost) the grievance.

### 3. "Special Circumstances" Justifying Failure to Exhaust

Again, because of my finding above in Part III.C.1., I need not reach the issue of whether "special circumstances" have been plausibly alleged that justify Plaintiff's failure to comply with the administrative procedural requirements. However, I note that, if I were to reach this issue, I would find that such special circumstances have been plausibly alleged (and supported).

Specifically, Plaintiff has alleged (and adduced at least some evidence indicating the existence of) the following facts: (1) he filed a grievance at Elmira C.F. regarding the confiscation of his arch supports on April 29, 2002; (2) in the days and weeks following April 29, 2002 (during the period in which he had to grieve the confiscation), he sought and received assurances from two corrections officers (other than Defendant Graubard) that his grievance had been received and filed, and that a hearing was imminent; (3) on or about June 10, 2002, he was transferred to the Walsh Regional Medical Unit at Mohawk C.F.; and (4) before and after his transfer, he more than once wrote to Defendant Graubard regarding the issue, and was finally informed, on July 12, 2002, that Defendant Graubard was unable to find Plaintiff's grievance. As a result, by the time he learned that his grievance had been lost, he was many miles removed from the location of the confiscation at issue (having been transferred to a different correctional facility), and was some 80 days removed from the date of the confiscation at issue-all apparently due to events that were mostly outside his control.

**\*13** Under the circumstances, I would find that a question of fact has been created about whether special circumstances exist justifying Plaintiff's failure to exhaust his administrative remedies. Again, I believe that my finding would be supported by this Court's recent decision in *Hoover*, which held that, even if an inmate's administrative remedies had been available to him at the time in question, the inmate had created an issue of fact on the issue of whether special circumstances existed excusing his failure to exhaust those

remedies when he argued (and adduced evidence indicating) that his grievances had been "lost in the system." [74] In addition, I believe that my finding would be supported by this Second Circuit's recent decision in *Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080 (2d. Cir. May 3, 2006), which appears to suggest that, under the circumstances, Plaintiff did not even have a duty to request an exception to the usual 14-day deadline for the filing of such grievances, as authorized by 7 N.Y.C.R.R. § 701.7(a)(1). [75]

Although I do not believe that my finding needs any further factual support, I believe that my finding is further supported by the fact that, on or about August 6, 2002, Plaintiff did in fact request an exception to the usual 14-day grievance-filing deadline, as authorized by 7 N.Y.C.R.R. § 701.7(a)(1). [76] Specifically, at the end of his August 6, 2002, grievance, he stated: "Action Requested: [S]ince mitigating circumstances exist[ ], that the attached grievance originally filed April 29, 2000, which has not been resolved, be filed accordingly and resolved appropriately ... pursuant to DOCS' Directive 4040. *See,*7 N.Y.C.R.R. § 707.7(a)(1) [sic]." [77] Given the Second Circuit's recent pronouncements in *Brownell v. Krom,* [78] I believe that this request was sufficiently intelligible to deserve an explicit response from the Mohawk C.F. Superintendent and CORC. However, that request either was not addressed or was implicitly denied by the Mohawk C.F. Superintendent and CORC. [79] I believe that this failure to explicitly decide the issue is an additional "special circumstance" excusing Plaintiff's failure to exhaust. [80]

Because I reject Defendants' failure-to-exhaust argument, I need not, and do not, analyze their additional argument that Plaintiff's exhausted claim should be dismissed along with his unexhausted claim (*see*Dkt. No. 55, Part 6, at 6), except to emphasize the existence of binding Second Circuit precedent rejecting such an argument. *See Oritz v. McBride,* 380 F.3d 649, 656, 663 (2d. Cir.2004) ("The question, then, is whether the district court was therefore required, under a so-called 'total exhaustion' rule, to dismiss the action in its entirety despite the presence of an otherwise viable, fully exhausted claim. We think not."), *cert. denied,*125 S.Ct. 1398 (2005).

### D. Whether Defendants Are Entitled to Qualified Immunity

In the alternative, Defendants argue that Plaintiff's claim against all three Defendants should be dismissed because they

are entitled to qualified immunity. [81] Because I have already concluded that the Court should dismiss Plaintiff's claims against all three Defendants (*see, supra,* Parts III.A., III.B.), I need not, and do not, reach this argument, except to make three points.

**\*14** First, Defendants correctly recite the general law regarding qualified immunity. Second, although I disagree with Defendants to the extent they argue that an inmate's right to *file* a grievance is not clearly established constitutional right, I agree with Defendants to the extent they argue that, at the very least, corrections officers of reasonable competence could have concluded that Defendant Graubard was not, at any time, violating that right. Third, I agree with Defendants to the extent they argue that, at the very least, corrections officers of reasonable competence could have concluded that Defendants Frawley and Peet did not violate any of Plaintiff's clearly established rights.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 55) be *GRANTED.*

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1742738

Footnotes

1   A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

2   *See also Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to afford a *pro se* civil rights inmate the sort of lenient treatment normally afforded *pro se* civil rights litigants, because the inmate was "an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements," who at one point had at least 30 simultaneously pending lawsuits); *Johnson v. Eggersdorf,* 97-CV-0938, Report-Recommendation, at 1, n. 1 (N.D.N.Y. Apr. 28, 1999) (Smith, M .J.) (denying leniency to *pro se* civil rights inmate who at one point had 12 simultaneously pending lawsuits in Northern District), *adopted,* 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *aff'd,* 8 Fed. Appx. 140 (2d Cir. May 17, 2001) (unpublished opinion); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000) (applying *Davidson* to *pro se* civil rights inmate who had 10 suits pending in district); *Brown v. Selsky,* 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n. 1 (W.D.N.Y. Jan. 10, 1995) (denying leniency to *pro se* civil rights inmate who had seven cases pending in district); *but see McFadden v. Goord,* 04-CV-0799, 2006 WL 681237, at *1, n. 3 (N.D.N.Y. March 14, 2006) (Kahn. J.) (refusing to deny leniency to *pro se* civil rights inmate, despite fact that he had seven cases pending in other districts in mid-1990s).

3   *See Gill v. DeFrank,* No. 00-0235, 2001 U.S.App. LEXIS 7103 (2d Cir. Apr. 16, 2001) (affirming order of U.S. District Court for Southern District of New York granting summary judgment to defendants); *Gill v. Jones,* 95-CV-9031, 2001 U.S. Dist. LEXIS 17674 (S.D.N.Y. Oct. 31, 2001) (granting defendants' motion for summary judgment); *Gill v. Bracey,* 99-CV-10429, 2001 U.S. Dist. LEXIS 9875 (S.D.N.Y. July 11, 2001) (granting defendants' motion for summary judgment); *Gill v. PACT Org.,* 95-CV-4510, 1997 U.S. Dist. LEXIS 13063 (S.D.N.Y. Aug. 28, 1997) (granting defendants' motion for summary judgment); *Gill v. Gilder,* 95-CV-7933, 1997 U.S. Dist. LEXIS 1236 (S.D.N.Y. Feb. 10, 1997) (granting defendants' motion for summary judgment).

4   *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243-245 (2d Cir.2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden ..., the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g .,* *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule

7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

5   *See* Local Rule 7.1(a)(3) ("*Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*").

6   *See Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

7   *See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir.2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied,*536 U.S. 922 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the ... affidavits ... show that there is no genuine issue as to any material fact....").

8   Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir.1995) [citations omitted], *cert. denied sub nom., Ferrante v. U.S.,* 516 U.S. 806 (1995).

9   *See Patterson,* 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'...[Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M .C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief.... Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence v. Maryland Cas. Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,*995 F.2d 1147 (2d Cir.1993).

10  *See*Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate,* 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

11  *See, e.g., Bickerstaff v. Vassar Oil,* 196 F.3d 435, 452 (2d Cir.1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.,* 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ), *cert. denied,*474 U.S. 829 (1985); *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

12  N.D.N.Y. L.R. 7.1(a)(2).

13  *See, e.g. Jeffreys v. City of New York,* 426 F.3d 549, 554-555 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary

judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd,* 136 Fed. Appx. 383 (2d Cir.2005) (unreported decision).

14    (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26, 30, 31, n. 4, & Exs. G, H [Plf.'s Compl.].)

15    (Dkt. No. 1, Attached "Statement of Facts," ¶ 31 [Plf.'s Compl.].)

16    (Dkt. No. 55, Part 6 at 6-7 [Def.'s Mem. of Law].)

17    (Dkt. No. 58 [Plf.'s Response Papers].)

18    *See Beers v. GMC,* 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia,* a memorandum of law); *cf.*Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response*... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so *respond,* summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

19    (Dkt. No. 59, Part 1, ¶ 12 [Defs.' Reply Affirm.].)

20    *See*Fed.R.Civ.P. 56(e) ("If the adverse party does not ... respond [with affidavits or other papers setting forth specific facts showing that there is a genuine issue for trial], summary judgment, *if appropriate,* shall be entered against the adverse party."); N.D.N.Y. L.R. 7.1(b)(3) (providing that "the non-moving party's failure to file or serve ... [opposition] papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause is shown,"*only where* the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."); *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically.").

21    *See, e.g., Odom v. Poirier,* 99-CV-4933, 2004 U.S. Dist. LEXIS 25059, at *35-38 (S.D.N.Y. Dec. 10, 2004) ("[T]he manner in which grievance investigations are conducted [as set forth in DOCS Directive No. 4040] do not create a protected liberty interest."); *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) ("The corrections officers' failure to properly address [plaintiff's] grievance by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest."); *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 389, n. 3 (W.D.N.Y.1998) (dismissing claim in which inmate alleged that director of inmate grievance program "violated his 14th Amendment rights by lying and forging documents and by failing to conduct a fair and impartial investigation into grievances that [the inmate] filed against certain correction officers"); *Harris v. Keane,* 962 F.Supp. 397, 406 (S.D.N.Y.1997) ("[T]he prison regulations requiring that a grievance disposition be returned with 15 days does not create an interest to which due process rights attach.").

22    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

23    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

24    *See United Mine Workers v. Illinois State Bar Ass'n,* 389 U . S. 217, 222 (1967) ("[T]he right[ ] to ... petition for a redress of grievances [is] among the most precious of the liberties safeguarded by the Bill of Rights."); *Morales v. Mackalm,* 278 F .3d 126, 131 (2d Cir.2002) ("Filing a grievance is protected activity."); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[Plaintiff's] filing of a grievance ... is constitutionally protected.... Retaliation against a prisoner for pursuing

a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); *Odom v. Poirier,* 99-CV-4933, 2004 U.S. Dist. LEXIS 25059, at *37 (S.D.N.Y. Dec. 10, 2004) ("[T]he filing of grievances is constitutionally protected...."); *Salahuddin v. Mead,* 95-CV-8581, 2002 U.S. Dist. LEXIS 15827, at *9 (S.D.N.Y. Aug. 26, 2002) ("Filing a grievance against a prison officer is protected by the First and Fourteenth Amendments of the U.S. Constitution.... Because filing a grievance is constitutionally protected, retaliation against prisoners who file grievances is actionable under § 1983."); *Walker v. Pataro,* 99-CV-4607, 2002 U.S. Dist. LEXIS 7067, at *60 (S.D.N.Y. Apr. 23, 2002) ("The law is clear that prison officials may not retaliate against an inmate for exercising his constitutional rights, including the right to file a prison grievance.").

25  *See, e.g., Graham,* 89 F.3d at 80 ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") [internal quotation marks, ellipses and citations omitted]. For example, to the extent that Plaintiff is alleging that Defendant Graubard *retaliated* against Plaintiff (by losing or destroying Plaintiff's grievance) for Plaintiff having exercised his First Amendment right to file a grievance, if Plaintiff does not allege and establish that Defendant Graubard was acting intentionally, he cannot meet the *causation* element of the three-part retaliation test, i.e., that it was the filing of the grievance (and not, say, simple neglect or an excusable mistake) that *caused* Defendant Graubard to lose or destroy Plaintiff's grievance.

26  *See Herrera v. Scully,* 815 F.Supp. 713, 726 (S.D.N.Y.1998) ("[E]ven if [the inmate's] allegations are held to support the claim that the Defendants acted negligently in violating the Directives [including DOCS Directive No. 4040], such negligent violations of [that Directive] still does not give rise to a § 1983 cause of action] ).

27  (Dkt. No. 1, Ex. H [Plf.'s Grievance No. MHK-6858-02].)

28  (*Id.*)

29  (*Id.*)

30  (Dkt. No. 55, Part 6 at 8-17 [Def.'s Mem. of Law].)

31  (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 1, 3, 7, 10, 11, 23, 29 & Exs. A, B, D, E, F [Plf.'s Verified Compl., often associating his foot condition with his knee condition and back pain, and attaching his medical records]; Dkt. No. 55, Parts 3-4, ¶¶ 8-10 & Exs. E-G [Defs.' Rule 7.1 Statement, attaching Plf.'s medical records]; Dkt. No. 58, Exs. A-E [Plf.'s Rule 7.1 Response, attaching Plf.'s medical records]; Dkt. No. 55, Part 4, at 22, 29-30 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg,* 02-CV-0082, N.D.N.Y .]; Dkt. No. 55, Part 4, at 65 [Ex. D to Defs.' Rule 7.1 Statement, attaching Apr. 29, 2003 trial testimony of Plaintiff from *Gill v. Butero,* 01-CV-0082, N.D.N.Y.) ]; *see also*Dkt. No. 26 at 1 [Order of Judge McAvoy, dated 9/26/03, including Plf.'s spondylosis, knee arthritis, and lower back pain among facts material to motion to dismiss].)

32  *See, e.g., Veloz v. State of New York,* 339 F.Supp.2d 505, 511, 522-527 (S.D.N.Y.2004) (painful and degenerative spondylosis was not serious medical need, but physical ailments resulting from botched surgery to alleviate that back problem, which ailments included loss of feeling from waist down and severe bladder problems, was serious medical need); *McKinnis v. Williams,* 00-CV-8357, 2001 U.S. Dist. LEXIS 10979, at *2, 9-10 (S.D.N.Y. Aug. 7, 2001) (prisoner's foot problem, which required "medical shoes" that were flat, was not sufficiently serious; *Chatin v. Artuz,* 95-CV-7994, 1999 U.S. Dist. LEXIS 11918, at *4-6, 11 & n. 5 (S.D.N.Y. Aug. 4, 1999) (prisoner's foot condition, which involved pain and swelling and required "orthotic" arch supports, was not sufficiently serious), *aff'd,* No. 99-0266, 2002 U.S. Dist. LEXIS 86 (2d Cir. Jan. 3, 2002) (unpublished opinion); *Veloz v. New York,* 35 F.Supp.2d 305, 309, 312 (S.D.N.Y.1999) (prisoner's foot problem, which involved arthritis and pain, and which required "a better shoe and sneaker with a built-in arch support" was not sufficiently serious); *Alston v. Howard,* 925 F.Supp. 1034, 1038-1040 (S.D.N.Y.1996) (prisoner's ankle condition, which caused pain in ankle and foot, and which caused Plaintiff to receive a prescription for orthopedic boots, was not sufficiently serious); *Cole v. Scully,* 93-CV-2066, 1998 U.S. Dist. LEXIS 5127, at *3-7, 12-20 (S.D.N.Y. Apr. 18, 1995) (prisoner's foot problem, and resulting pain, which required him to wear special footwear, including extra-wide boots and sneakers, was not sufficiently serious), *aff'd,* No. 95-2274, 1995 U.S.App. LEXIS 39859 (2d Cir. Nov. 21, 1995) (unpublished opinion); *see also Dixon v. Nusholtz,* No. 98-1637, 1999 U.S.App. LEXIS 13318, at *1, 5 (6th Cir.1999) (prisoner's need for orthopedic shoes was not a "grave medical need" under Eighth Amendment); *Jackson v. O'Leary,* 89-CV-7139, 1990 U.S. Dist. LEXIS 17249, at *2, 4 (1990) (N.D.Ill.Dec. 17, 1990) (prisoner's foot problem requiring him to wear only soft gym shoes was not one of "especially grave concern" for purposes of Eighth Amendment).

33  (Dkt. No. 58, ¶¶ 31-38 & Ex. A [Plf.'s Rule 7.1 Response].)

**34**    (Dkt. No. 55, Part 4, at 29-30, 67-68 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg,* 02-CV-0082, N.D.N.Y.].)

**35**    (Dkt. No. 55, Part 4, at 65-66, 71 [Ex. D to Defs.' Rule 7.1 Statement, attaching Apr. 29, 2003 trial testimony of Plaintiff from *Gill v. Butero,* 01-CV-0082, N.D.N.Y.] ].)

**36**    (Dkt. No. 55, Part 4, at 53 [Ex. B to Defs.' Rule 7.1 Statement, attaching Plf.'s Feb. 6, 2002 deposition testimony from *Gill v. Calscibetta,* 00-CV-1553, N.D.N.Y.].)

**37**    (Dkt. No. 55, Part 4, at 22 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg,* 02-CV-0082, N.D.N.Y.].)

**38**    I will assume, for the sake of argument, that this testimony is consistent with Plaintiff's prior and subsequent testimony at his June 4, 2003 deposition (only page 22 of this testimony is included, not the pages immediately before and after that page), and that Plaintiff did not (when offering this testimony) intend to imply that his bulging disc problem somehow included his foot deformity.

**39**    (Dkt. No. 55, Part 6, at 9 [Defs.' Mem. of Law].)

**40**    (*See, e.g.,*Dkt. No. 58, ¶¶ 14-16, 31-38 & Exs. A-D [Plf.'s Rule 7.1 Response].)

**41**    (Dkt. No. 55, Part 6, at 12-17 [Defs.' Mem. of Law].)

**42**    (Dkt. No. 1, Attached "Statement of Facts," ¶ 15 [Plf.'s Verified Compl.]; Dkt. No. 55, Part 4, at Ex. E-2 [Defs.' exhibits, attaching Plf.'s medical record dated 4/23/02, by Nurse Frawley, concerning security concerns from Plf.'s metal arch supports].)

**43**    (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 15-16 [Plf.'s Verified Compl.].)

**44**    (Dkt. No. 1, Attached "Statement of Facts," ¶ 16 [Plf.'s Verified Compl.]; Dkt. No. 1, Ex. A [Plf.'s Verified Compl., attaching medical record dated 11/3/93, regarding prescription of "custom-made Aliplast/plastazote laminate orthoses"]; Dkt. No. 1, Ex. B [Plf.'s Verified Compl., attaching medical records date 2/8/01, indicating that he was prescribed "a pair of new boots," not specifying that they were to contain *metal* inserts; Dkt. No. 55, Part 4, at Ex. E-1 [Defs.' exhibits, attaching Plf.'s medical record dated 4/9/02, indicating merely that Plaintiff had received a prescription for "arch supports ... for size 9 boots," not for arch supports with metal inserts, as opposed to plastic inserts]; Dkt. No. 55, Part 4, at Ex. E-2 [Defs.' exhibits, attaching Plf.'s medical record dated 4/18/02, indicating that Plaintiff had requested permit for "metal braces & metal arch supports," apparently acknowledging need for such a permit].)

**45**    (Dkt. No. 55, Part 4, at Exs. E-2, E-3 [Defs.' exhibits, attaching Plf.'s medical records dated 5/14/02, 5/17/02, 5/21/02, 5/30/02, 5/31/02, 6/3/02, 6/7/02, and 6/10/02]; Dkt. No. 1, ¶¶ 20-21 & Ex. F [Plf.'s Verified Compl.].)

**46**    (Dkt. No. 55, Part 4, at E-5 [Ex. E to Def.'s Mem. of Law, attaching Plf.'s medical record dated 6/3/02].)

**47**    (Dkt. No. 55, Part 4, at Ex. E-3 [Defs.' exhibits, attaching Plf.'s medical record dated 5/21/02; Dkt. No. 1, Ex. A [Plf.'s Verified Compl., attaching medical record dated 11/3/93, regarding prescription of "custom-made Aliplast/plastazote laminate orthoses"]; Dkt. No. 1, Ex. B [Plf.'s Verified Compl., attaching medical records date 2/8/01, indicating that he was prescribed the new arch supports, i.e., the ones with metal inserts, because the former arch supports, i.e., the ones with plastic inserts, had "worn out" on or before 2/8/01]; Dkt. No. 1, ¶¶ 20-21 & Ex. F [Plf.'s Verified Compl., asserting occurrence of medical visit on 5/21/02 regarding arch supports].)

**48**    (Dkt. No. 55, Part 4, at F-2, F-3 [Defs.' Rule 7.1 Statement, attaching Plf.'s medical records dated 6/21/02, 6/24/02 and 7/1/02]; Dkt. No. 58, ¶ 7 [Plf.'s Supp. Opp. to Defs.' Motion].)

**49**    *Farmer,* 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

**50**    (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law].)

**51**    (*See*Dkt. No. 55, Part 3, ¶ 4 [Defs.' Rule 7.1 Statement, citing to "Exhibit A," attached at Dkt. No. 55, Part 4] .)

**52**    (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law].)

**53**    (Dkt. No. 59, Part 1 [Defs.' Reply Affirm.].)

**54**    (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n. 4 [Plf.'s Verified Compl.].)

**55**    *See, e.g., Patterson,* 375 F.3d at 229-230 (partially vacating and remanding decision issued by Northern District of New York because the plaintiff's verified allegation that a lieutenant engaged in intimidating behavior that was "notoriously racist," together with other evidence, created an issue of material fact as to plaintiff's hostile work environment claim under 42 U.S.C. § 1983-specifically, with respect to whether the lieutenant's conduct was sufficiently humiliating to alter the conditions of the plaintiff's employment); *Fitzgerald,* 251 F.3d at 362-363 (partially vacating and remanding decision issued by Northern District of New York because the plaintiff's verified allegations of a defendant's "constant stream of unjustified criticisms of her work described specific, related instances of harassment" were sufficient to create an issue of material fact as to the plaintiff's hostile work environment claim under 42 U.S.C. § 1983), *cert. denied,*536 U.S. 922

(2002); *Colon,* 58 F.3d at 872 (partially vacating and remanding decision issued by Northern District of New York because the plaintiff's verified allegations regarding the temporal proximity between the filing of disciplinary charges against the plaintiff and the filing of two lawsuits by the plaintiff were sufficient to create an issue of material fact as to the plaintiff's retaliation claim under 42 U.S.C. § 1983).

56 (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n. 4 [Plf.'s Verified Compl.].)

57 (Dkt. No. 1, Exhibits G, H at 2 [Plf.'s Verified Compl.].)

58 (Dkt. No. 58, at Exhibits F, G at 2 [Plf.'s Response Papers].)

59 *See Monahan v. N.Y.C. Dept. of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (holding that similar local rule in Southern and Eastern Districts of New York, i.e., "Local Rule 56.1," did not deprive district court of discretion to *sua sponte* "conduct an assiduous review of the record"). For example, Local Rule 7.1(b)(3) provides that "the non-moving party's failure to file or serve ... [opposition] papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause is shown," *only where* the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein." N.D.N.Y. L.R. 7.1(b)(3).

60 Fed.R.Civ.P. 56(e) [emphasis added].

61 As the Second Circuit has held, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that ... the moving party is entitled to a judgment as a matter of law.' " *Champion,* 76 F.3d at 486.

62 *See, e.g., Robinson v. Gov't of Malaysia,* 269 F.3d 133, 144, 147, n. 14 (2d Cir.2001) (applying rule in non-civil rights case in which the plaintiff had been represented by counsel during district court's decision on defendants' motion to dismiss under Rule 12[b][1] ); *Adirondack Cycle & Marine, Inc. v. Am. Honda,* 00-CV-1619, 2002 WL 449757, at * 1 (N.D.N.Y. March 18, 2002) (McAvoy, J.) (applying rule in non-civil rights case in which the plaintiff had been represented by counsel during decision on defendant's motion for summary judgment); *cf. Patterson,* 375 F.3d at 229-230 (applying rule in civil rights case in which the plaintiff had been represented by counsel during decision on defendants' motion for summary judgment, *see* 00-CV-1940, 2002 WL 31677033 [N.D.N.Y. Oct. 30, 2002] ); *Fitzgerald,* 251 F.3d at 362-363 (applying rule in civil rights case in which the plaintiff had been represented by counsel during decision on defendants' motion for summary judgment, *see* 36 F.Supp.2d 490 [N.D.N.Y.1998] ).

63 42 U.S.C. § 1997e.

64 *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N .Y.2002).

65 *See also Thomas v. N.Y.S. Dep't of Corr. Servs.,* 00-CV-7163, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) ("[W]here a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the prisoner...."); *O'Connor v. Featherstone,* 01-CV-3251, 2002 U.S. Dist. LEXIS, at *5 (S.D.N.Y. Apr. 29, 2002) ("[A]n inmate may ... defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where ... an inmate has makes a 'reasonable attempt' to exhaust his administrative remedies...."); *Rodriguez v. Hahn,* 99-CV-11663, 2000 U.S. Dist. LEXIS 16956, at *4 (S.D.N.Y. Nov. 22, 2000) (denying defendants' motion to dismiss for failure to exhaust administrative remedies where inmate's efforts "evidence[d] a reasonable attempt to exhaust [his administrative remedies]"); *Baughman v. Harless,* 142 Fed. Appx. 354, 359 (10th Cir.2005) ("If prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies, prison officials render that remedy unavailable such that a court will deem the procedure exhausted."); *Brown v. Croak,* 312 F.3d 109, 112-113 (3d Cir.2002) (because "[prison] officials thwarted [plaintiff's] efforts to exhaust his administrative remedies ... the formal grievance proceeding required by [the prison grievance system] was never 'available' to [plaintiff] within the meaning of [the PLRA]"), *cited by Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("[A] remedy that prison officials prevent a prisoner from utilizing is not an 'available' remedy under [the Prison Litigation Reform Act]."), *cited by Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004) (holding that "[t]he defendants' failure to implement the multiple rulings in [plaintiff's] favor rendered administrative relief 'unavailable' under the PLRA.").

66 *See, e.g., Thomas v. N.Y.S. Dep't of Corr. Servs.,* 00-CV-7163, 2002 WL 31164546, at *2-3 (S.D.N.Y. Sept. 30, 2002) (genuine issue of material fact existed about whether prisoner made "reasonable attempt" to file a grievance, where prisoner adduced some evidence that he had filled out grievance, had attempted to file it, but had been denied a pass enabling him to file it); *O'Connor v. Featherstone,* 01-CV-3251, 2002 U.S. Dist. LEXIS, at *5 (S.D.N.Y. Apr. 29, 2002) ("[A]n inmate may ... defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where ... an inmate has made a 'reasonable attempt' to exhaust his administrative remedies, especially

where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts."); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006) ("[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.") [citations omitted]; *Baughman,* 142 Fed. Appx. at 359 ("[A]dministrative remedies may be found unavailable ... where the prisoner supports his allegations that he placed his grievances in the mail, but they were lost or destroyed and therefore his efforts to exhaust available administrative remedies were impeded by correctional officers.").

67 I note that all of these decisions were issued by the Southern District, and all but one were issued before the creation of Second Circuit's three-part exhaustion analysis in August of 2004. *See Veloz,* 339 F.Supp.2d at 515-516 (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," there was "no evidence that any particular officer thwarted his attempts to file," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Nunez v. Goord,* 172 F.Supp.2d 417, 428-429 (S.D.N.Y.2001) (rejecting inmate's argument that the prison's grievance procedure had been rendered ineffective by the practice of prison officials' losing or destroying grievances, because, instead of filing a grievance with respect to his failure-to-protect claim, inmate wrote a letter to superintendent and did not follow up when he received no response); *cf. Martinez v. Williams,* 186 F.Supp.2d 353, 357 (S.D.N.Y.2002) (inmate who received no response to grievance "could have and should have appealed grievance in accord with grievance procedure"), *accord, Waters v. Schneider,* 01-CV5217, 2002 WL 727025, at *1-2 (S.D.N.Y. Apr. 23, 2002).

68 Defendants argue that Plaintiff's efforts to grieve the confiscation of his arch supports did not include his filing of an August 6, 2002, grievance at Mohawk C.F. (Dkt. No. 59, Part 1, ¶ 10 [Defs.' Reply Affirm.]; Dkt. No. 1, Ex. H at 1 [Plf.'s Verified Compl., attaching the August 6, 2002, grievance]; Dkt. No. 58, Ex. G at 1 [Plf.'s Response Papers, attaching the August 6, 2002, grievance].) I agree with Defendants that, rather than focusing mainly on the confiscation of his arch supports, Plaintiff's August 6, 2002, grievance focused mainly on Defendant Graubard's (alleged) malfeasance with regard to the loss or destruction of Plaintiff's (allegedly) properly filed April 29, 2002, grievance. (*Id.*) However, Plaintiff's August 6, 2002, grievance (1) attached a copy of his April 29, 2002, grievance, and (2) implicitly but intelligibly requested, in the "Action Requested" portion of the grievance, an exception to the normal 14-day filing deadline (for that April 29, 2002, grievance) imposed by 7 N.Y.C.R.R. § 701.7(a)(1).(*Id.* [erroneously citing this regulation as "7 N.Y.C.R.R. § 707.7(a) (1)."].) *See Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *4 (2d. Cir. May 3, 2006) (requiring merely "notice pleading" for exhaustion to be achieved; adding that "[a]ll the grievance need do is object intelligibly to some asserted shortcoming."). Subsequently, both the Mohawk C.F. Superintendent and CORC either failed to address or implicitly denied this request for an extension of the 14-day filing deadline. (Dkt. No. 1, Ex. H-3; Dkt. No. 58, Exs. G-3, G-4.) *See Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir.2001) (remedies not "available" to prisoner where officials failed to respond to his grievance), *cited by Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004).

69 I believe that my finding is also supported by other district court decisions in this Circuit. *See, e.g., Rodriguez v. Hahn,* 99-CV-11663, 2000 U.S. Dist. LEXIS 16956, at *3-5 (S.D.N.Y. Nov. 22, 2000) (inmate made reasonable attempt to exhaust his administrative remedies where he sent various letters regarding his complaint, and corrections officers never filed some of the inmate's grievances).

70 (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law, citing Paragraph 4 of Plaintiff's Complaint].)

71 (Dkt. No. 1, ¶¶ 4.a., 4.b. [Plf.'s Compl.].)

72 (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n. 4, Exhibits G, H at 1 [Plf.'s Compl.].)

73 (Dkt. No. 29, Part 1, ¶ 14 [Defs.' Answer].)

74 *Hoover,* 99-CV-1855, Report-Recommendation, at 10-13, *adopted,* 2005 WL 1949890, at *3.

75 In *Brownell,* a prisoner claimed that prison officials had lost his property (including legal materials) during a prison transfer. Subsequent actions by prison officials delayed the date on which the prisoner obtained reason to believe that the loss of his property was intentional. By the time he discovered the evidence, it was several months after his property had disappeared, which placed him outside of the 14-day time limit for filing a grievance. The Second Circuit held that, although the prisoner could have, at that point, sought an exception to the 14-day time limit but did not do so, "[n]onetheless, we conclude that [the prisoner's] failure to seek the further administrative remedies that were available to him were reasonable." *Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *6 (2d. Cir. May 3, 2006).

76 (Dkt. No. 1, Ex. H-1 [Plf.'s Compl., attaching Grievance No. MHK-6858-02]; Dkt. No. 58, Ex. G-1 [Plf.'s Response Papers, attaching Grievance No. MHK-6858-02].)

77    (*Id.* [erroneously citing pertinent regulation as "7 N.Y.C .R.R. § 707.7(a)(1)" which should have been 7 N.Y.C.R.R. § 701.7(a)(1) ].)

78    *See Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *4 (2d. Cir. May 3, 2006) ("All the grievance need do is object intelligibly to some asserted shortcoming.").

79    (Dkt. No. 1, Ex. H-3; Dkt. No. 58, Exs. G-3, G-4.)

80    *See Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *6-7 (2d. Cir. May 3, 2006) (concluding that "special circumstances" existed based, in part, on the fact that prison officials erroneously decided that the grievance the plaintiff filed "deserved no consideration").

81    (Dkt. No. 55, Part 6 at 17-20 [Defs.' Mem. of Law].)

---

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1605770
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Edward HARRISON, Plaintiff,
v.
Glenn GOORD, William Mazzuca Roland Larkin,
Carlton Good Arlan Pelc, James Buonato Charles
Hobbs, Dale Larsen Sgt. Rama, Richard Woodward
Nicholas Volhos, Kenneth Conklin, Rene Hernandez,
Frank Woodward, and Enrique Torres, Defendants.

No. 07 Civ. 1806(HB).  |  June 9, 2009.

West KeySummary

1    **Civil Rights**

👉 Criminal Law Enforcement; Prisons

State prisoner failed to show that administrative
remedies were unavailable for purposes of
excusing his failure to exhaust his administrative
remedies prior to filing a § 1983 suit against
prison officials. Prisoner contended that he was
unable to exhaust his administrative remedies
because his mail was tampered with. However,
prisoner admitted that he was provided with
grievance forms by prison officials, that he
filed numerous complaints, both formally and
informally, and that he observed his formal
complaints being deposited into a locked box
designated for such complaints. Additionally,
prisoner continued to file grievance after
grievance during the same period of time when
his mail was allegedly being tampered with. 42
U.S.C.A. § 1983.

Cases that cite this headnote

**OPINION & ORDER**

Hon. HAROLD BAER, JR., District Judge.

**\*1** Plaintiff Edward Harrison ("Harrison" or "Plaintiff")
brings this *pro se* civil rights action pursuant to 42 U.S.C.
§ 1983 against Defendants Glenn Goord, William Mazzuca,
Roland Larkin, Carlton Good, Arlan Pelc, James Buonato,
Charles Hobbs, Dale Larsen, Sgt. Rama, Richard Woodward,
Nicholas Volhos, Kenneth Conklin, Rene Hernandez, Frank
Woodward, and Enrique Torres, [1] claiming that he was
subject to cruel and unusual punishment due to the
conditions of his confinement, harassment, retaliation and
mail tampering in violation of his rights under the First,
Eighth and Fourteenth Amendments. On January 21, 2009,
Defendants [2] moved for summary judgment pursuant to Rule
56(c) of the Federal Rules of Civil Procedure on the grounds
that (1) Harrison failed to exhaust his administrative
remedies as required by the Prison Litigation Reform Act ("PLRA"),
42 U.S.C. § 1997e(a); (2) Harrison's allegations are incredible
as a matter of law; (3) Harrison's allegations fail to state a
cause of action for a constitutional violation; (4) Defendants
are entitled to qualified immunity; (5) Defendants lacked
personal involvement; and (6) Harrison has failed to establish
deliberate indifference. Plaintiff opposed Defendants' motion.
For the reasons set forth below, Defendants' motion for
summary judgment is granted.

**I. FACTUAL BACKGROUND [3]**

Harrison has been incarcerated in the DOCS system since
2002. *See* Deposition of Edward Harrison ("Harrison Dep.")
at 5:21–25. He was transferred from Five Points Correctional
Facility Special Housing Unit ("Five Points") to Fishkill
Special Housing Unit ("Fishkill") in July 2004. Complaint
("Compl.") ¶ 38. Before his transfer, Harrison had filed
several grievances regarding misbehavior reports he had been
issued at Five Points relating to an alleged work stoppage,
which is unrelated to the allegations of this case. *See* Harrison
Dep. at 100:5–101:6. Shortly after arriving at Fishkill, in
July 2004, Harrison was visited by a Mr. Davidow of
the Inspector General's Office, who interviewed Harrison
regarding his grievances related to the events that had
occurred at Five Points. *See* Compl. ¶ 40. Directly after the
interview with Inspector Davidow, as he was being escorted
from the interview room to his housing unit, Defendants
Conklin and Volhos warned Harrison that he should not
have been contacting the Inspector General's office. *Id.* ¶ 41.
Plaintiff alleges that beginning with this incident in July 2004,
Defendants began a pattern of harassment and confrontation

in retaliation for Harrison's complaints of events that occurred in correctional facilities.

Plaintiff does not allege that he encountered any other threats or harassment relating to this incident until over two months later, on September 25, 2004, when Defendant Volhos came to his cell to make it "verbally clear that Plaintiff could and would get physically hurt or injurred [*sic* ]." *Id.* ¶ 42. [4] As a result of this confrontation, Harrison filed a formal complaint against Defendant Volhos. *Id.* ¶ 43. Several days later, after escorting him back to his cell after a dentist's appointment, Defendant Conklin failed to remove Harrison's shackles for upwards of 45 minutes. Harrison Dep. at 16:2–6. Plaintiff filed a formal complaint against Defendant Conklin as a result of this incident. Compl. ¶ 45. Several days later, Defendant Conklin approached Harrison in his cell block and called Harrison a "rat;" thereupon, Plaintiff filed another complaint against Defendant Conklin. *Id.* ¶ 46–47. Several days later, Defendants Larson and Frank Woodward visited Harrison's cell to investigate a complaint, where Woodward verbally abused Harrison, using curse words and a racial slur, and told Harrison to stop filing grievances. *Id.* ¶ 48. Defendant Larson, who was Defendant Frank Woodward's supervisor, merely stood by and did nothing. *Id.* Plaintiff filed yet another formal complaint based on this incident. *Id.* ¶ 49.

**\*2** Approximately one month later, Plaintiff was issued a number of misbehavior reports, including for possession of contraband, destruction of property, and failure to obey a direct order. *See id.* ¶¶ 50–52; Pl. Aff. Exh. 2, 3, 6. Plaintiff alleges that these misbehavior reports were issued in retaliation for having spoken with the Inspector General in July and for filing complaints against the various corrections officers at Fishkill. *See* Compl. ¶¶ 51–54. Plaintiff alleges that he appealed these "tickets" but never received any reply. *Id.* ¶¶ 58–59. As a consequence of having been "written up," Harrison was moved from his cell on the second floor to a different cell on the first floor. *See id.* ¶ 60. While escorting Harrison to the new cell, Defendant Hernandez told Harrison he was lucky he didn't fall and hurt himself on the walk down the stairs; Harrison interpreted this statement as a threat. *See id.* ¶ 61. Upon arriving in the cell, Harrison noticed a small amount of water that had collected on the floor, but did not complain about it. *See* Harrison Dep. at 97:22–98:7. As it turned out, the shower in the cell "did not have the proper equipment" and every time Harrison took a shower, the shower drain would back-up and approximately an inch and a half of water would collect on the cell floor. Compl. ¶¶ 64–67; Harrison Dep. at 98:17–24. The cell was

designated for handicapped inmates, and the flooding was apparently caused by the fact that the shower, which could accommodate a wheelchair, had a low "lip" and allowed water to spill over from the shower area into the cell. Harrison Dep. at 19:21–20:5; Declaration of Dale Larsen ("Larsen Decl.") ¶ 6. Because the door to the recreation pen ("rec pen") attached to the cell let in a draft, the water on the floor would become "freezing cold" and the collected water was "dirty" and "filthy." Compl. ¶ 68. Harrison alleges he informed numerous officers of the problem with the shower, but his complaints and requests for cleaning supplies were ignored. *Id.* ¶ 69. He further alleges that Sergeant Woodward was aware of the flooding situation, but did nothing to remedy it. *Id.* ¶¶ 71–72. Harrison and his cellmate both filed grievances concerning the shower conditions. *Id.* ¶ 75. Harrison also personally told Defendant Goode about the situation, and Goode told Harrison "he would look into the problem," but Harrison was never told what was being done to correct the problem. *Id.* ¶¶ 77–78. Unrelated to the shower conditions, on October 31, 2004, Plaintiff wrote a grievance complaining that he was being deprived of communication with his family, that his legal mail was being interfered with, that he was denied certain personal items and that he had been placed in mechanical restraints without due process. *Id.* ¶ 79–80.

On December 17, 2004, when Defendant Conklin was escorting Harrison's cellmate out of the cell, per standard procedure, he asked Harrison to step outside into the rec pen area. *See* Harrison Dep. at 64:13–23; Compl. ¶ 82; Declaration of Kenneth Conklin ("Conklin Decl.") ¶ 7. At the time, Harrison was dressed only in his undergarments. *See* Harrison Dep. at 64:5–6. As the door to the rec pen was closing, Defendant Conklin ordered Harrison to get dressed in his winter clothing, but he did not. *Id* . at 65:4–10. Plaintiff alleges that Conklin left him locked out in the rec pen in his underwear for an excessive period of time. Compl. ¶ 82. As a result of this incident, Defendant Conklin issued Plaintiff a misbehavior report for failure to obey a direct order. Pl. Aff. Exh. 14. Plaintiff filed a formal complaint relating to this incident. *See* Declaration of Arlan Pelc ("Pelc Decl.") ¶ 6, Ex. A. Plaintiff received a response from Defendant Pelc regarding this incident, to which he replied on December 31, 2004. *See* Compl. ¶ 90. Thereafter, Plaintiff embarked on a prolific letter-writing campaign, writing approximately 100 letters from December 2004 to February 2005, both internal and external, to various individuals and organizations such as Commissioner Goord, the Inspector General's office, the Bureau of Prisons, the Legal Aid Society and the American Civil Liberties Union. *See id.* ¶¶ 86, 88–96, 98–99, 101–111.

Plaintiff does not specify the contents of these letters or the grievances to which they may have related.

**\*3**  Plaintiff does not dispute that he never appealed any of the formal grievances he did file that relate to the incidents that give rise to this lawsuit. Plaintiff alleges that, notwithstanding his many complaints and grievances, he received no responses to the majority of his correspondence. Because he never heard back, Plaintiff alleges the Defendants must have been tampering with his mail and causing it to be destroyed or deflected from its intended destination. However, Plaintiff testified at his deposition that he observed his grievances and letters being deposited into the locked box designated for outgoing mail, that he doesn't know who has the keys to the mailbox, and that his only basis for the contention that his mail was tampered with is that he never received responses to his grievances and letters. *See* Harrison Dep. at 84:13–91:7; *see also id.* at 73:2–11.

## II. LEGAL STANDARD

A motion for summary judgment must be granted if the moving party shows "there is no genuine issue as to any material fact" and it "is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).* Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).* In showing the existence of a genuine issue of material fact, "the non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir.2004); see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)* (finding party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Rather, he "must come forward with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001); see also Fed.R.Civ.P. 56(e)* ("When a motion for summary judgment is made and supported as provided in

[the] rule, ... the adverse party's response ... must set forth *specific facts* showing that there is a genuine issue for trial.") (emphasis added). The facts must be presented in a form that would be admissible at trial. *Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir.2008).* Even if the parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Where, as here, the party opposing summary judgment is proceeding *pro se,* the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth., 202 F.3d 530, 536 (2d Cir.1999); see also Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir.2005).* Still, "proceeding *pro se* does not otherwise relieve [a party] from the usual requirements of summary judgment." *Price v. Engert, 589 F.Supp.2d 240, 244 (W.D.N.Y.2008)* (internal quotation marks and citation omitted). As is well-established by both the Supreme Court and the Second Circuit, even *pro se* litigants must comply with the relevant law and procedures. *See McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)* ("While we have insisted that the pleadings prepared by [*pro se* ] prisoners be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006)* ("[*P* ]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citation omitted).

## III. DISCUSSION

**\*4**  "In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the [PLRA]. Among other reforms, the PLRA ... requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)* (citations omitted). "The Supreme Court has held that 'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Macias v. Zenk, 495 F.3d 37, 40 (2d Cir.2007)* (quoting *Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)).* The exhaustion provision of the PLRA states:

No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones, 549 U.S. at 204.* As the Supreme Court has held, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id. at 211* (citation omitted). Moreover, the Supreme Court has held that the PLRA requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo,* 548 U.S. 81, 101, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.; see also Davis v. State of New York,* No. 07–3262–pr, 2009 U.S.App. LEXIS 3439, at *3, 2009 WL 424151 (2d Cir. Feb. 20, 2009). Thus, for example, "filing an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. *See Woodford,* 548 U.S. at 83–84. Moreover, "[i]n the wake of *Woodford,* an inmate can no longer claim that partial exhaustion of administrative remedies is sufficient because prison officials have notice of his claim." *Petrucelli v. Hasty,* 05–cv–2002 (DLI)(LB), 2009 U.S. Dist. LEXIS 24889, at *17, 2009 WL 766200 (E.D.N.Y. Mar. 25, 2009) (citing *Macias,* 495 F.3d at 43 (overruling *Braham v. Clancy,* 425 F.3d 177, 183 (2d Cir.2005)). As the Second Circuit has noted, this "proper exhaustion" requirement is necessary because the "benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Macias,* 495 F.3d at 41. Prisoners are required to exhaust their administrative remedies "even if they believe that administrative remedies would be ineffective or futile." *Johnson v. Killian,* No. 07 Civ. 6641(LTS)(DFE), 2009 U.S. Dist. LEXIS 34670, at *8, 2009 WL 1066248 (S.D.N.Y. Apr. 21, 2009) (citation omitted); *see also Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**\*5** As the Supreme Court has noted, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, all that the PLRA requires is compliance with the prison's grievance procedures. *Id .* In this case, Defendants' undisputed evidence indicates that DOCS maintains a three-tiered grievance procedure, as set forth in the New York Code, Rules and Regulations ("N.Y.C.R.R."). 7 N.Y.C.R.R. § 701.5. Full exhaustion of administrative remedies in the New York system requires compliance with all three steps of the grievance procedure. *Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.2004) ("Complete exhaustion of the ... administrative remedies through the highest level for each claim is required."). First, the inmate must file a complaint within twenty-one calendar days of the incident about which he is complaining. 7 N.Y.C.R.R. § 701.5(a); Declaration of Karen R. Bellamy ("Bellamy Decl.") ¶ 3. Upon receiving the complaint, the Inmate Grievance Resolution Committee ("IRGC"), which is made up of inmates and prison officials, has sixteen calendar days to resolve the matter informally, or if that is unsuccessful, to hold a hearing. 7 N.Y.C.R.R. § 701.5(b). After a hearing, the IGRC has two working days to reach a decision. *Id.* at § 701.5(b)(3). The second step in the process, after an adverse decision on an initial grievance, the grievant may file an appeal with the superintendent of the facility within seven calendar days of the superintendent's determination. 7 N.Y.C.R.R. § 701.5(c), 701.8(h); Bellamy Decl. ¶ 6. Third, if the inmate is not satisfied with the superintendent's response, he may then appeal to the Central Office Review Committee ("CORC"). 7 N.Y.C.R.R. 701.5(d). Where an inmate alleges harassment on the part of prison personnel, the procedure provides for an expedited grievance process wherein the first step is skipped and the complaint is made directly to the official's supervisor in the first instance. 7 N.Y.C.R.R. § 701.8; Bellamy Decl. ¶ 4–5. However, even when this alternative procedure is prescribed, "the final step in the grievance procedure always remains the appeal to CORC." *Gardner v. Daddezio,* 07 Civ. 7201(SAS), 2008 U.S. Dist. LEXIS 92715, at *9, 2008 WL 4826025 (S.D.N.Y. Nov. 5, 2008) (citing 7 N.Y.C.R.R. § 701.8(h)).

In this case, it is undisputed that Harrison failed to exhaust administrative procedures as to any of his sixteen causes of action. While the record shows that Harrison filed at least one formal I.R.G.C. complaint relating to incidents giving rise to this lawsuit, *see* Pelc Decl., Ex. A, he never appealed any of these grievances to the CORC. *See* Bellamy Decl. ¶ 10, Exh. A.[5] Each of his claims in this lawsuit is grievable under the expedited procedure

for filing of harassment complaints, described above. *Id* . ¶ 9. However, Harrison argues that his failure to exhaust should be excused under the Second Circuit's line of cases, beginning with *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004), that recognized certain exceptions to the exhaustion requirement. Specifically, Harrison argues that "although prison officials provided grievance forms, they unlawfully confiscated Plaintiff's mail and threatened him, thereby essential[ly] barring Plaintiff from exhausting his administrative remedies." Plaintiff's Memorandum of Law ("Pl.Mem.") at 8.

 **\*6** Under the *Hemphill* line of cases, a court must make a three-step inquiry before it dismisses a prisoner's complaint for failure to exhaust his remedies. First, a court should consider whether administrative remedies were unavailable. *Hemphill,* 380 F.3d at 686; *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004) ("A court may not dismiss for failure to exhaust administrative remedies unless it determines that such remedies are available.") (alterations and citations omitted). The test for assessing the availability of administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill,* 380 F.3d at 686. Second, a court should inquire into whether the defendant's actions, by threat or otherwise, inhibited the inmate's exhaustion of remedies, so as to estop the defendant from raising the plaintiff's failure to exhaust as a defense. *Hemphill,* 380 F.3d at 686; *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004) (finding exhaustion is not jurisdictional, but that it is an affirmative defense that is subject to estoppel). Finally, a court should consider whether there are "special circumstances" that plausibly justify the prisoner's failure to comply with administrative procedure, such as a reasonable misinterpretation of the requirements of the prison system's regulations. *Hemphill,* 380 F.3d at 686, 689. The existence of such special circumstances "must be determined by looking at circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Giano v. Goord,* 380 F.3d 670, 678 (2d Cir.2004). [6]

In this case, Harrison argues that he "tried to exhaust administrative remedies" but was unable to do so because he was threatened and because his mail was tampered with. *See* Pl. Mem. at 6–8. It is unclear whether, by making this argument, Harrison contends that administrative avenues were not available to him, under the first prong of the *Hemphill* analysis, or whether he contends that Defendants

hampered his ability to exhaust and are thus estopped from raising the failure to exhaust as a defense, under the second *Hemphill* prong. *See* 380 F.3d at 686. With respect to whether administrative remedies were available, the Second Circuit has held that "threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Id.* at 688. Moreover, Plaintiff admits that he was provided with grievance forms by prison officials, Pl. Mem. at 8, and that he filed numerous complaints, both formally and informally. Indeed, Plaintiff testified that he personally observed his formal complaints being deposited into a locked box designated for IRGC complaints. Additionally, viewed in the light most favorable to Plaintiff, the record reflects that he continued to file grievance after grievance during the same period of time when he was allegedly being threatened and harassed and his mail was allegedly being tampered with. The last threat that Harrison alleges any of the Defendants made to him was in October 2004, when Defendant Hernandez commented that Harrison was lucky he didn't fall and hurt himself on the stairs while being escorted to his new cell. However, almost immediately upon arriving at the new cell, Harrison began grieving the condition of the shower. He continued to file grievances throughout the winter of 2004 up through his transfer from Fishkill in February 2005. Accordingly, it is apparent that a reasonable person of ordinary firmness in Harrison's position, as well as Harrison himself, would not have thought that administrative remedies were unavailable, and Harrison has not satisfied the first prong of the *Hemphill* analysis. *See, e.g., Winston v. Woodward,* No. 2:05 Civ. 3385(RJS), 2008 U.S. Dist. LEXIS 43208, at \*21–23, 2008 WL 2263191 (S.D.N.Y. May 30, 2008) (finding that plaintiff's attempts to file grievances and appeals "cuts against his contention that administrative remedies were functionally unavailable to him"); *Amador v. Superintendents of Dep't of Corr. Servs.,* No. 03 Civ. 0650(KTD), 2007 U.S. Dist. LEXIS 89648, at \*28, 2007 WL 4326747 (S.D.N.Y. Dec. 4, 2007) (rejecting plaintiffs claims that administrative remedies were made unavailable by prison officials' threats against them because the fact that plaintiffs were able to file formal grievances "directly [cut] against" their argument that remedies were unavailable).

 **\*7** Plaintiff also appears to argue that because his mail was tampered with, Defendants should be estopped from raising his failure to exhaust his remedies as a defense.

However, Plaintiff has presented no evidence from which a reasonable jury could conclude that the Defendants were engaged in mail tampering. It is true that Plaintiff has alleged that he sent numerous complaints and grievances, and that he never received a response; he also notes that M.P. Stone, an officer on the IRGC, informed him that the Committee never received any of his grievances and advised him that he could resubmit them, which he did. However, as Plaintiff acknowledged at his deposition, his only reason for believing that his mail was actually being tampered with was that he never received any responses to his many grievances and letters. He has no proof that his mail was ever opened or tampered with, and if it was, that it was the Defendants who engaged in such misconduct. Cutting even further against his contentions is the fact that he personally observed his mail being deposited into a locked box, and that he does not know who has the key to open that mail box. Since Harrison cannot present any evidence that the Defendants even had access to his mail, there is certainly insufficient evidence that they tampered with it. *See Petrucelli,* 2009 U.S. Dist. LEXIS 24889 at *25–27, 2009 WL 766200 (finding plaintiff failed to fully exhaust administrative remedies because, although he suggested that prison officials had either inadvertently or intentionally failed to mail his appeal, he had provided no evidence to support this claim); *Winston v. Woodward,* 2008 U.S. Dist. LEXIS 43208 at *24, 26, 2008 WL 2263191 (finding that because plaintiff failed to produce any direct or circumstantial evidence to substantiate plaintiff's claims of mail tampering, he failed to satisfy PLRA's exhaustion requirement); *see also Rauso v. Vaughn,* No. 96–6977, 2000 U.S. Dist. LEXIS 9035, at *, 2000 WL 873285 (E.D.Pa.2000) (dismissing mail tampering claim because "[a]t a minimum, Plaintiff had to create a record" connecting defendant's knowledge of grievances against him to mail tampering, and "there [was] no evidence that defendant ... ever tampered with Plaintiff's mail"). Moreover, there is direct evidence, provided by Harrison himself, that indicates that during the same timeframe when Harrison alleges his mail was being destroyed, his mail was indeed reaching its intended destination. *See, e.g.,* Pl. Aff. Ex. 16 (12/18/04 letter to "I.R.G.C." stamped "Received" by Inmate Grievance Program 12/20/04); Pl. Aff. Ex. 22 (1/6/05 letter acknowledging receipt of Harrison's complaint dated 12/25/04). Thus, although there may be some "metaphysical doubt" as to whether someone somewhere tampered with Harrison's mail, *see Matsushita,* 475 U.S. at 586–87, there is no evidence that any such misconduct occurred so that Harrison may survive dismissal of his claims based on his estoppel argument. [7] Plaintiff did not argue that any special

circumstances excuse his failure to exhaust administrative remedies, and the Court can conceive of none based on the record before it.

**\*8** It should be noted that although the undisputed evidence shows that Harrison did verbally convey his grievances to several of the Defendants, and that he sent numerous letters to various individuals and organizations relating to his complaints, including to the Superintendent of Fishkill and the Commissioner of DOCS, these efforts, for better or worse, just don't cut the mustard so as to satisfy the strict exhaustion requirement. *See Collins v. Goord,* 438 F.Supp.2d 399, 413 (S.D.N.Y.2006) ("Although Collins wrote letters and completed forms in repeated efforts to obtain photocopies, these letters and forms are not sufficient absent facts excusing Collins' use of the IGP process."); *Lee v. Carson,* 310 F.Supp.2d 532, 537 (W.D.N.Y.2004) (holding that prisoner could not **exhaust** by verbally conveying grievance to two prison guards); *Colon v. Farrell,* No. 01 Civ. 6480(FE), 2004 WL 1126659, at *5 (W.D.N.Y. Sept. 23, 2004) (noting that "**letters** of complaints to DOCS employees and officials do not satisfy the grievance procedure exhaustion requirement"); *Conner v. Hurley,* No. 00 Civ. 8354(LTS)(AJP), 2004 WL 885828, at *2 (S.D.N.Y. Apr. 26, 2004) (explaining that **letters** to facility superintendent and DOCS **commissioner** "may not be deemed substitutes for strict compliance with the requirements of the IGP"). In addition, even assuming that Harrison filed the initial complaints that he claims to have filed, and never received a response, this does not excuse the failure to exhaust his remedies. *See* 7 N.Y.C.R.R. § 701.8; *Donahue v. Bennett,* 02–CV–6430 CJS (B), 2004 U.S. Dist. LEXIS 17189, at *20, 2004 WL 1875019 (W.D.N.Y. Aug. 17, 2004) ("Plaintiff is incorrect when he argues that the failure of prison officials to respond to a grievance eliminates further obligations on plaintiff's part."); *Lashley v. Artuz,* No. 01–Civ.–11542 (SAS), 2004 U.S. Dist. LEXIS 9707, at *5–6, 2004 WL 1192090 (S.D.N.Y. May 27, 2004) (noting that "[e]ven where an inmate receives no response to his initial level grievance, he is still required to file an appeal in order to satisfy the exhaustion requirement"); *Arce v. Keane,* No. 01 Civ. 2648(BSJ), 2004 U.S. Dist. LEXIS 3698, at *7, 2004 WL 439428 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); *see also* Bellamy Decl. ¶ 7 ("[I]f an inmate does not receive a response to a grievance alleging employee harassment in a timely fashion, he may appeal his grievance to CORC by filing a notice of decision to appeal with the Inmate Grievance Program clerk at his facility.") (citing 7 N.Y.C.R.R. § 701.8(g)). Thus, because

there is no dispute that Harrison did not appeal any of his grievances to which his claims in the instant lawsuit relate to the CORC, as required by the DOCS grievance procedure, and because Harrison has not sufficiently shown that any of the exceptions under *Hemphill* excuses his failure to exhaust, summary judgment in favor of the Defendants is appropriate on all of Harrison's claims. As such, the Court need not address Defendants' myriad other arguments in support of their motion for summary judgment.

**\*9** Typically, the dismissal of a claim for failure to exhaust administrative remedies is without prejudice, because a "prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit." *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004) (quoting *Snider v. Melindez,* 199 F.3d 108, 111–12 (2d Cir.1999)). However, "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust," dismissal with prejudice is warranted. *Id.* at 88. Here, Defendants have not argued that dismissal should be with prejudice, nor have they shown that administrative remedies have become unavailable. *See Donahue,* 2004 U.S. Dist. LEXIS 17189, at \*27 & n. 13, 2004 WL 1875019. Accordingly, although dismissal is appropriate due to Harrison's failure to exhaust his remedies, such dismissal will be without prejudice to Plaintiff's ability to re-file in accordance with the DOCS procedure, appealing those grievances to the CORC, and reinstating the instant suit.

Should Harrison choose to pursue his administrative remedies and file a new federal complaint, the court advises him to be mindful of the requirement that all defendants in a suit under 42 U.S.C. § 1983 must be shown to have been personally involved in the constitutional violations alleged. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). A supervisor may be shown to be personally involved if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, (2d Cir.1995) (citations omitted). The doctrine of *respondeat superior* does not apply to claims under § 1983; that is, a defendant cannot be held liable merely because he occupied a supervisory position. *See Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) ( "[P]laintiff's claim for money damages against [the Commissioner] requires a showing of more than linkage in the prison chain of command."). "Further, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Brown v. Eagen,* 08–CV–0009 (TJM/DRH), 2009 U.S. Dist. LEXIS 24876, at \*16–17, 2009 WL 815724 (N.D.N.Y. Mar. 26, 2009) (citations omitted). A complaint that fails to allege personal involvement is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987). Here, in particular, although it is unnecessary to explicitly decide at this time, the Court is skeptical as to whether valid claims exist as against Defendants Goord, Mazzuca, Larkin, Goode, Buonato, Hobbs, Larson, or Rama. Plaintiff should be aware that prison supervisors cannot be deemed personally involved based simply on a response to a complaint, and should Plaintiff draft a new complaint, he is advised to analyze the validity of naming each defendant before filing any such complaint. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). For instance, the receipt by certain defendants of letters complaining of alleged constitutional violations do not necessarily indicate that those defendants satisfy the personal involvement requirement, even if the letters are "ignored"; when the letters are forwarded to the appropriate party, supervisory personnel is entitled to rely on the established administrative complaint system to resolve the issue. *See, e.g., id.* (holding DOCS Commissioner not liable for referring plaintiff's first letter of appeal to subordinate or for summarily responding to plaintiff's second letter requesting a status update on his appeal); *Westbrook v. City Univ. of N.Y.,* 591 F.Supp.2d 207, 225 (E.D.N.Y.2008) ("Even if [defendant] had not forwarded plaintiff's letters, ... the fact that an official ignored a letter alleging unconstitutional conduct is

not enough to establish personal involvement.") (citations omitted); *Ortiz–Rodriguez v. New York State Dep't of Corr. Servs.,* 491 F.Supp.2d 342, 347 (W.D.N.Y.2007); *Greene v. Mazzuca,* 485 F.Supp.2d 447, 452 (S.D.N.Y.2007); *Swindell v. Supple,* 02–CV–3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb.3, 2005); *Gayle v. Lucas,* 97 Civ. 0883(MGC), 1998 U.S. Dist. LEXIS 3919, at *11–12, 1998 WL 148416 (S.D.N.Y. Mar. 30, 1998).

**\*10** Since this argument is persuasive, I decline to examine the remaining concerns voiced by the Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Plaintiff's complaint is dismissed without prejudice. The Clerk of this Court is instructed to close all open motions in this matter and remove the matter from my docket.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1605770

## Footnotes

1 Defendant Goord is the Commissioner of the New York State Department of Corrections Services ("DOCS"); Defendant Mazzuca is the Superintendent of the Fishkill Correctional Facility; Defendant Larkin is the Deputy of Programs at Fishkill Correctional Facility; Defendant Pelc is the Acting Deputy Superintendent at the Fishkill Correctional Facility; Defendant Good is a Supervising Corrections Counselor for DOCS; Defendant Buonato is a Lieutenant at Fishkill Correctional Facility; Defendant Hobbs is a Lieutenant at Fishkill Correctional Facility; Defendant Larsen is a Corrections Sergeant at Fishkill Correctional Facility; Defendant Rama is an Inmate Grievance Committee Sergeant at Fishkill Correctional Facility; Defendant Richard Woodward is a Sergeant at Fishkill Correctional Facility; and Defendants Volhos, Conklin, Hernandez, Frank Woodward and Torres are Corrections Officers at Fishkill Correctional Facility.

2 Defendants Goord, Mazzuca, Rama and Frank Woodward were never served with process; therefore they are not parties to this case or to the instant motion for summary judgment. *See* Fed.R.Civ.P. 4(m).

3 This account of the facts is taken from the Complaint, Defendants' Statement Pursuant to Local Rule 56.1, with accompanying affidavits and exhibits and Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("Pl.Aff.") and accompanying exhibits. Although Plaintiff did not submit a response to Defendants Rule 56.1 Statement, he did submit a detailed affidavit and exhibits. The Court has examined carefully Plaintiff's memorandum of law and proffered evidence in considering the instant motion. As required on a motion for summary judgment, the facts of this case are relayed in the light most favorable to Plaintiff.

4 Harrison does not allege that Volhos, or any other Defendant, ever physically harmed him; his allegations are limited to threats of physical harm.

5 Plaintiff clearly was familiar with the procedures for appealing complaints, however, as is evidenced by the fact that he successfully appealed two claims unrelated to this lawsuit, arising out of incidents at Five Points prior to his transfer to Fishkill. *See id.*

6 There is some doubt among courts of this Circuit as to whether the three-part inquiry under *Hemphill* has survived the Supreme Court's holding in *Woodward. See, e.g., Toomer v. County of Nassau,* No 07–CV–01495 (JFB)(ETB), 2009 U.S. Dist. LEXIS 38160, at *25 n. 8, 2009 WL 1269946 (E.D.N.Y. May 5, 2009) (collecting cases). The Second Circuit analyzed the PLRA's exhaustion requirement in light of *Woodward* in *Macias v. Zenk,* 495 F.3d 37 (2d Cir.2007), but did not hold explicitly whether the *Hemphill* analysis remains the rule of this Circuit. However, the Second Circuit has, in recent cases, applied the *Hemphill* analysis. *See, e.g., Vogelfang v. Riverhead County Jail Officers,* 07–1268–cv, 2009 U.S.App. LEXIS 1914, 2009 WL 230132 (2d Cir. Feb. 2, 2009) (finding it was error for district court not to consider plaintiff's arguments that failure to exhaust should be excused under *Hemphill* ). Nonetheless, because I find, as detailed below, that Harrison does not satisfy his burden to show he is excused from exhaustion under the *Hemphill* analysis, I need not address this somewhat thorny open question.

7 There is authority, including in recent district court cases in this Circuit, for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide. *See Pavey v. Conley,* 544 F.3d 739, 740–42 (7th Cir.2008) (*en banc* ) (Posner, J.); *Wyatt v. Terhune,* 315 F.3d 1108, 1119–20 (9th Cir.) (in motion to dismiss for failure to exhaust administrative remedies under PLRA, court may

"decide disputed issues of fact"), *cert. denied,* 540 U.S. 810, 124 S.Ct. 50, 157 L.Ed.2d 23 (2003); *Sease v. Phillips,* 06 Civ. 3663(PKC), 2008 U.S. Dist. LEXIS 60994, at *9 n. 2 (S.D.N.Y. July 25, 2008); *Amador,* 2007 U.S. Dist. LEXIS 89648 at *17 n. 7, 2007 WL 4326747; *Dukes v. S.H.U. C.O. John Doe # 1,* 03 Civ. 4639(CLB)(MDF), 2006 U.S. Dist. LEXIS 41517, at *21, 2006 WL 1628487 (S.D.N.Y. June 12, 2006) (ordering evidentiary hearing on question of exhaustion); *Priester v. Rich,* 457 F.Supp.2d 1369, 1277 (S.D.Ga.2006), *aff'd sub nom. Bryant v. Rich,* 530 F.3d 1368 (11th Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008). However, because I find that there is no genuine issue of material fact on the exhaustion question, I need not weigh in on the debate as to whether the Court or the jury is in the proper position to decide those issues.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 2795332
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gabriel MIDALGO, Plaintiff,

v.

Sgt. BASS, Spinner, C.O. Streeter, John
Doe,[1] Head Medical Staff, C.O. Bennet,[2]
Sgt. Trimm, C.O. Bouyea, Defendants.

No. 9:03-CV-1128 (NAM/
RFT). | Sept. 26, 2006.

**Attorneys and Law Firms**

Gabriel Midalgo, Plaintiff, Pro Se.

Eliot Spitzer, Attorney General for the State of New York,
Senta B. Siuda, Esq., Assistant Attorney General, Syracuse,
NY, Attorney for Defendants.

### MEMORANDUM-DECISION AND ORDER

NORMAN A. MORDUE, Chief U.S. District Judge.

**\*1** Presently before this Court is defendants' motion (Dkt.
No. 105) for summary judgment dismissing the complaint in
this civil rights action pursuant to 42 U.S.C. § 1983. In his
amended complaint (Dkt. No. 8), plaintiff, an inmate in the
custody of the New York State Department of Correctional
Services ("DOCS"), alleges deliberate indifference towards
his health and safety in violation of the Eighth Amendment,
interference with mail and access to the law library in
violation of the First Amendment, inadequate visitation, and
harassment.

Defendants' motion was referred to United States Magistrate
Judge Randolph F. Treece for a Report and Recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).
In a thorough Report and Recommendation (Dkt. No. 110),
Magistrate Judge Treece recommends that the Court grant
the motion for summary judgment. Plaintiff objects (Dkt.
No. 112). After the Court extended time for plaintiff to file
additional objections to the Report-Recommendation (Dkt.
No. 113), plaintiff filed a second objection (Dkt. No. 114).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court conducts
a *de novo* review of those parts of a magistrate judge's
Report and Recommendation to which a party specifically
objects. Where only general objections are filed, the Court
reviews for clear error. *See Brown v. Peters,* 1997 WL
599355,*2-* 3 (N.D.N.Y.), *aff'd without op.,*175 F.3d 1007
(2d Cir.1999). Failure to object to any portion of a Report
and Recommendation waives further judicial review of the
matters therein. *See Roldan v. Racette,* 984 F.2d 85, 89 (2d
Cir.1993).

Plaintiff's objections include a variety of allegations. A
number of them revisit issues which are the subject of
the Report and Recommendation. They do not, however,
demonstrate the existence of material questions of fact
which would warrant denial of summary judgment. Other
allegations concern events allegedly occurring subsequent
to the filing of the amended complaint herein; these are
not properly the subject of this action. Upon thorough *de
novo* review, the Court accepts and adopts the Report and
Recommendation.

It is therefore

ORDERED that the Report and Recommendation (Dkt. No.
110) is accepted and adopted in its entirety; and it is further

ORDERED that defendants' motion for summary judgment
(Dkt. No. 105) is granted and the action is dismissed.

IT IS SO ORDERED.

RANDOLPH F. TREECE, Magistrate Judge.

### REPORT-RECOMMENDATION and ORDER

Pro se Plaintiff Gabriel Midalgo brings a civil action
pursuant to 42 U.S.C. § 1983, alleging deliberate indifference
towards his health and safety in violation of the Eighth
Amendment, interference with mail and access to the law
library in violation of the First Amendment, inadequate
visitation, and harassment. Dkt. No. 8, Am. Compl. at ¶¶
42-54. Defendants Bass, Sergeant at the Upstate Correctional
Facility ("Upstate"), Correction Officer ("C.O.") Spinner,
C.O. Streeter, C.O. Bennett, Trimm, Sergeant at Upstate, and
C.O. Bouyea, bring this Motion for Summary Judgment. Dkt.
No. 105.Plaintiff opposes the Motion. Dkt. No. 106.For the

reasons to follow, it is recommended that the Motion for Summary Judgment be **granted**.

# I. FACTS [3]

**\*2** During the period of time of the alleged incidents, Plaintiff was incarcerated at the Upstate Correctional Facility. Dkt. No. 105, Defs.' 7.1 Statement at ¶ 3. In December 2002, an inmate was placed in Plaintiff's cell who Plaintiff alleges "was a paid informant." Am. Compl. at ¶ 16. Plaintiff further alleges that a wiretap was also placed in his cell during that time.*Id.* On February 4, 2003, Plaintiff wrote letters to the mail clerk and warden regarding his misplaced or delayed newspaper and magazine subscriptions and was told that they were handed out by correction officers. *Id.* at ¶ 23, Ex. C, Lt. to Warden, dated Feb. 4, 2003; Lt. to Mail Clerk, dated Feb. 4, 2003; Lt. from Nason to Midalgo, dated Feb. 10, 2003. Plaintiff believed his subscriptions had been misplaced or delayed since January 2003.*Id.* at ¶ 22.Plaintiff's complaints about his subscriptions were forwarded to the Deputy Superintendent of Programs. *Id.* at ¶ 23, Ex. C, Lt. from Girdich to Midalgo, dated Feb. 5, 2003. Several months later, Plaintiff alleged he still had not received his magazines and newspapers and thus canceled his subscriptions.*Id.* at ¶ 24, Ex. C, Lts. to F.H.M. & Maxim, dated Apr. 21, 2003. Then, on April 20, 2003, Plaintiff's family arrived for a visit but were delayed for several hours in seeing him. *Id.* at ¶ 25.Plaintiff also claims that on April 24, 2003, and from June to September 2003, he received rotten fruits and vegetables and spoiled milk at meal time on several occasions. [4] *Id.* at ¶¶ 26 & 28.On April 26, 2003, Plaintiff wrote a complaint where he grieved that an officer took an excessive amount of time to read his legal mail, he received rotten food, there was a delay in visitation with his family, magazine and newspapers were intercepted and either destroyed or misplaced, his cell was wiretapped, and the outgoing and incoming mail was being read. *Id.,* Ex. A, Grievance, dated Apr. 26, 2003. Since Plaintiff received no response, he submitted a letter seeking an appeal to the Superintendent. [5] *Id.,* Grievance Lt., dated May 27, 2003.

On June 21, 2003, Plaintiff filed a grievance concerning "continuous harassment" regarding Plaintiff's legal mail as well as complaints made about his food and recreation. Defs.' 7.1 Statement, Ex. A, Grievance, dated June 21, 2003, & Case History & Record, UST 16208-03. C.O. Streeter provided a memo based on Plaintiff's grievance stating that he did

not provide Plaintiff with spoiled food and that the meal "is inspected and packed in the mess" and then it is inspected once again by him prior to going into Plaintiff's cell. *Id.,* Ex. A, Streeter Lt. to Sgt. King, dated July 20, 2003. Correction Officers Spinner and Trimm also submitted memos regarding the grievance and noted they did not refuse recreation time and the grievance may have been a result of a misbehavior report filed against Plaintiff. *Id.,* Ex. A, Spinner Lt. to Sgt. King, dated July 23, 2003, & Trimm Lt. to Sgt. King, dated July 29, 2003. Sergeant King then submitted a memo to Captain Bezio stating that after he spoke to Plaintiff, and after interviewing several corrections officers on the matter, he could find no evidence to support the allegations. *Id.,* Ex. A, Sgt. King Lt. to Captain Bezio, dated Aug. 1, 2003. Based on the above investigation, the Inmate Grievance Resolution Committee ("IGRC") recommended that the grievance complaint pass through to the Superintendent. *Id.,* Ex. A, Case History & Record on Grievance dated June 21, 2003. Thereafter, the Superintendent found that the complaint had been investigated and that there was "no evidence to support [the] complaint[.]"*Id.,* Ex. A, Superintendent's Appeal, dated Aug. 6, 2003. Plaintiff then appealed to the Central Office Review Committee ("CORC"). The CORC made several findings which included that the Superintendent's determination be upheld based on the same reasoning provided by the Superintendent and that there was no substantiation to the claim that Plaintiff was harassed nor was there sufficient evidence to conclude there was harassment and that performance of the employees' duties should not be construed as harassment. [6] *Id.,* Ex. A, CORC Appeal, dated Oct. 1, 2003.

**\*3** On June 27, 2003, a Fight Investigation Form was prepared by Sergeant Bass. Am. Compl., Ex. "Exhaustion of my Administrative Remedies ... [with fight investigation] ...," Fight Investigation Form, dated June 27, 2003. The form had a notation stating that Midalgo purportedly was defending himself in a fight he had with his cellmate because they had been in rival gangs. *Id.* The Sergeant's assessment was that it was a real fight and they were in rival gangs. *Id.* After the fight, Midalgo and his cellmate were placed in different cells. *Id.*

On July 1, 2003, Plaintiff sent Captain Bezio a letter stating that a known enemy had been placed in his cell and that his cell had been searched and that no contraband slip was received by Plaintiff. [7] Defs.' 7.1 Statement, Ex. A, Pl.'s Lt., dated July 1, 2003. Captain Bezio responded stating that an investigation had been completed as to the issues

Plaintiff had raised. *Id.,* Ex. A, DOCS Lt. from Captain Bezio, dated July 14, 2003. In Captain Bezio's letter, he noted that Sergeant Trimm interviewed Plaintiff about the missing materials but that Plaintiff did not provide any information. *Id.* Furthermore, the facility records were reviewed and it was found that there were no documented enemies of Plaintiff at the facility. *Id.*

On July 10, 2003, Plaintiff filed a grievance regarding bunking with an alleged known enemy, harassment, and other complaints. *Id .,* Ex. A, Grievance, dated July 10, 2003. C.O. Spinner submitted a memo to Sergeant Trimm stating that no legal material was removed from the cell and only items which were of excess were removed and logged, for which Plaintiff received a copy.*Id.,* Ex. A, Spinner Lt. to Sgt. Trimm, dated July 6, 2003. The Cell Search or Inspection Notice listed the items that were removed. *Id.,* Ex. A, Cell Search or Inspection Notice, dated June 27, 2003. Similarly, Sergeant Trimm sent a memo to Captain Bezio on July 6, 2003, stating that he had interviewed Plaintiff and that Plaintiff could provide no information as to the law books removed or any legal work that was missing. *Id.,* Ex. A, Sgt. Trimm Lt. to Captain Bezio, dated July 6, 2003. In addition, Trimm stated that Midalgo was not in a cell with a known enemy. *Id.* The IGRC recommended that the grievance complaint filed pass through to the Superintendent. *Id.,* Ex. A, Case History & Record for Grievance dated July 10, 2003. The Superintendent found that after an investigation, there was no evidence to show that Plaintiff was placed in a cell with a known enemy and that inmates are bunked together based on "[a]n assessment of compatibility" and that there was no evidence to support any of the other complaints. *Id.,* Ex. A, Superintendent's Appeal, dated July 15, 2003. Plaintiff appealed to the CORC, which found the complaint to be without merit.[8] *Id.,* Ex. A, CORC Appeal, dated Aug. 20, 2003.

On July 17, 2003, Plaintiff wrote to food services stating he was receiving spoiled food. Am. Compl., Ex. "Exhaustion of my Administrative Remedies Some Material Lost ...," Food Services Lt., dated July 17, 2003. On August 5, 2003, in a letter from Captain Racette to Plaintiff, Captain Racette stated that after conducting an investigation "a check with the messhall indicates that the trays were received in the proper condition" and that no other inmate had any problems with the trays. *Id.,* Ex. "Exhaustion of my Administrative Remedies Some Material Lost ...," Mem. from Captain Racette, dated Aug. 5, 2003.

**\*4** On July 28, 2003, Plaintiff received a letter stating two books he was requesting from the law library were not required to be provided by the facility's law library and that the other book he sought should be available and if it was missing, then a replacement would be ordered. *Id.,* Ex. D, Lt. from Litzenberger, dated July 28, 2003. On August 3, 2003, Plaintiff wrote a letter to Jean Botta stating that the library staff was refusing to provide him with a law book and that he had been told that two books were not available at the facility.[9] *Id.,* Ex. D, Lt. to Botta, dated Aug. 3, 2003. Then, on August 4, 2003, Plaintiff submitted a letter to "D.S.G. Kiebert" stating he was receiving the wrong books and cases from the law library.[10] *Id.,* Ex. C, Lt., dated Aug. 4, 2003. He also noted that he did not receive a law book that was supposed to be available. *Id.* On August 5, 2003, Midalgo received a memo from Captain Racette stating that his complaints were investigated and that when Plaintiff was interviewed, he did not provide any further information, which resulted in a finding that the staff acted properly. *Id.,* Ex. "Exhaustion of my Administrative Remedies Some Material Lost ...," Mem. from Captain Racette, dated Aug. 5, 2003. On August 19, 2003, Plaintiff received a letter from the Law Library Supervisor, C.O. Bennett, stating one book requested was available but since it was in looseleaf and because Plaintiff was in SHU, he could request a photocopy of the materials.*Id.,* Ex. D., Lt. from Bennett, dated Aug. 19, 2003.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986))."When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly

controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) and *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

**\*5** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998)."[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."*Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994).

### B. Eleventh Amendment

Plaintiff brings suit against Defendants Bass, Spinner, Streeter, Bennett, Trimm, and Bouyea in both their individual and official capacities. *See* Am. Compl. Plaintiff seeks injunctive relief as well as compensatory damages against these individuals in their individual and official capacities. *Id.* at Wherefore Clause.

The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."U.S. CONST.

amend. XI. The Eleventh Amendment bars a suit against the state in federal court unless the state consents to being sued or Congress legislatively overrides a state's immunity. *Huang v. Johnson,* 251 F.3d 65, 69 (2d Cir.2000). The state's immunity extends to state officials "act[ing] on behalf of the state" when the state is the "real, substantial party in interest." *Id.* at 69-70 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc.,* 506 U.S. 139, 142-47 (1993) & quoting *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 101-02 (1984)). Moreover, the Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their official capacities."*Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003).

Therefore, the Defendants cannot be sued in their official capacities in a claim for money damages. However, Midalgo may seek damages from them in their individual capacities. Furthermore, Plaintiff may sue the Defendants for injunctive relief in both their individual and official capacities because "official-capacity actions for prospective relief are not treated as actions against the State."*Cruz v. Gomez,* 202 F.3d 593, 595 n. 2 (2d Cir.2000) (quoting *Will v. Michigan Dep't of State Police,* 491 U .S. 58, 71 n. 10 (1989)).

### C. Exhaustion of Remedies

Defendants claim that Plaintiff has failed to exhaust his administrative remedies as to the following claims: 1) medical care; [11] 2) mail tampering; 3) law library issues; and 4) family visitation. Dkt. No. 105, Defs.' Mem. of Law at p. 4.

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter v. Nussle,* 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004).

**\*6** The New York State Department of Corrections has created a three-step process to exhaust all administrative remedies available to inmates. *See Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). First, the inmate must file a grievance complaint with the Grievance Clerk within fourteen

(14) days of the incident. N.Y. COMP.CODES R. & REGS. tit. 7, § 701.7(a)(1). The complaint is then submitted to the IGRC to review the grievance. N.Y. COMP.CODES R. & REGS. tit. 7, § 701.7(a)(2)-(5). Second, the inmate may appeal the IGRC decision to the Superintendent. SeeN.Y. COMP.CODES R. & REGS. tit. 7, § 701.7(b). Third, if the inmate appeals the Superintendent's determination, the CORC is to make a final administrative determination. N.Y. COMP.CODES R. & REGS. tit. 7, § 701.7(c). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983."Colon v. Harvey, 344 F.Supp.2d 896, 897 (W.D.N.Y.2004) (citing Neal v. Goord 267 F.3d 116, 122 (2d Cir.2001) & Santos v. Hauck, 242 F.Supp.2d 257, 259 (W.D.N.Y.2003)). Moreover, "[e]ven if a prisoner receives no reply to a grievance or appeal, he is not excused from completing the appeals process. The rules provide that matters not decided within the prescribed time limits must be appealed to the next level of review."Walters v. Carpenter, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) (citing N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8 [12] & Mendoza v. Goord, 2002 WL 31654855, at *2 (S.D.N.Y. Nov. 21, 2002)).

The Second Circuit has suggested a three-step inquiry when the inmate opposes a defendant's assertion that the inmate did not exhaust his remedies.

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. Abney v. McGinnis, 380 F.3d 663, 667-68 (2d. Cir.2004). The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, Johnson v. Testman, 380 F.3d 691, 695 (2d. Cir.2004), or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir.2004). If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."Giano v. Goord, 380 F.3d at 675 (citing Berry v. Kerik, 366 F.3d 85, 88 (2d Cir.2003); Rodriguez order).

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.2004); see also Braham v. Clancy, 425 F.3d 177, 181-82 (2d Cir.2005).

**\*7** Since failure to exhaust is an affirmative defense and defendants may be estopped from asserting the defense as "special circumstances may excuse a prisoner's failure to exhaust," the specific circumstances of each case must be examined. Giano v. Goord, 380 F.3d 670, 675 (2d Cir.2004) (citations omitted). Some special circumstances include, but are not limited to, occasions when prison officials "inhibit an inmate's ability to utilize administrative grievance procedures," if the prisoner received a favorable disposition from his grievance but the time to appeal had expired and no relief was forthcoming, and all appeals were undertaken but prison officials did not respond within the required time period. Id. at 677.The effect of a plaintiff's justification as to why there was no exhaustion "is that, even though the administrative remedies are no longer available for reasons of timing or other procedural restrictions, such restrictions cannot serve to keep the plaintiff's suit from proceeding."Id. at 676.Additionally, "exhausted claims filed alongside unexhausted ones may proceed even though the unexhausted claims must be dismissed."Id. at 675.

Here, the Amended Complaint was filed on October 24, 2003. Dkt. No. 8. Any grievances filed subsequent to that date are untimely and irrelevant to the current action. [13] Therefore, only grievances filed prior to the date the Amended Complaint was filed will be considered.

Plaintiff's June 21st complaint grieved the issues of harassment, food, and recreation. See Defs.' 7.1 Statement, Ex. A, Grievance, dated June 21, 2003. Plaintiff's other complaint in July addressed the issues of a known enemy in his cell, harassment, and a cell search where items were taken. Id., Ex. A., Grievance, dated July 10, 2003. Both of these grievances were appealed to the Superintendent and CORC, thus, they are exhausted.

As to Plaintiff's claims regarding the law library, outgoing/incoming mail, and visitation, Defendants assert such were not fully exhausted. Plaintiff states that he did exhaust all his remedies as shown by the Exhibits to his Amended Complaint. Dkt. No. 106, Pl.'s Mem. of Law at Point Two. Plaintiff claims that Defendant Spinner destroyed legal documents that showed he attempted to exhaust. Id. Midalgo also alleges that he "filed and appealed at least ten grievances"

and that "more than half were ignored or intercepted" by Defendant Streeter. *Id.*

Plaintiff did provide a copy of his grievance on the law library, outgoing mail, and visitation issues, which was dated April 26, 2003; however, the CORC stated they never received any grievances from April 2003. Am. Compl., Ex. A, Grievance, dated Apr. 26, 2003; Defs.' 7.1 Statement, Ex. A, CORC Appeal, dated Oct. 1, 2003. Plaintiff also submitted a letter stating that since he received no response that he sought an appeal to the Superintendent. Am. Compl., Ex. A, Grievance Lt., dated May 27, 2003. No other appeals were instituted on that grievance. Nonetheless, even if the CORC stated they did not receive the grievance, Plaintiff attempted to fulfill the exhaustion requirement by seeking an appeal to the next level as required when he received no response. *See Walters v. Carpenter,* 2004 WL 1403301, at *3; N.Y. COMP.CODES R. & REGS . tit. 7, § 701.8.

**8** Since Defendants put forth the affirmative defense of failure to exhaust, this Court will make the three-step inquiry set forth by the Second Circuit. With the first inquiry, depending on the prisoner's explanation, the Court must decide whether the remedies were "available." " 'Available' means more than the mere presence of a grievance system but also that the system is functionally available to the prisoner."*Shaheen v. Hollins,* 2005 WL 2179400, at *3 (N.D.N.Y. Sept. 7, 2005) (citing *Hemphill v. New York,* 380 F.3d at 686-87 ("[I]n some circumstances, the behavior of the defendants may render administrative remedies unavailable.")); *see also Abbas v. Senkowski,* 2005 WL 2179426, at *6 (S.D.N.Y. Sept. 9, 2005). The "proper test for determining whether ordinary grievance procedures were 'available' [is] whether 'a similarly situated individual of ordinary firmness [would] have deemed them available.' " *McCullough v. Burroughs,* 2005 WL 3164248, at *3 (E.D.N.Y. Nov. 29, 2005) (quoting *Hemphill v. New York,* 380 F.3d at 688). In addition, "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *McCullough,* 2005 WL 3164248, at *3 (quoting *Hemphill v. New York,* 380 F.3d at 688). Here, administrative remedies were available as a similarly situated inmate of ordinary firmness could deem the remedies available and because Plaintiff stated he did actually file the grievances, copies of which were provided to the Court.

As remedies were "available," it must be determined if the Defendants' own actions estop them from raising the failure to exhaust affirmative defense. The Second Circuit has held that "prison officials' threats or other inhibiting conduct may estop defendants from asserting the affirmative defense of non-exhaustion."*Hemphill v. New York,* 380 F.3d at 688. Also, in making a determination based on the second inquiry, "[t]o establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment."*McCullough,* 2005 WL 3164248, at *4 (quoting *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir.2002)). In addition, "[w]hen asserting equitable estoppel against the government, one must also prove affirmative misconduct."*McCullough,* 2005 WL 3164248, at *4 (quoting *Lewis v. Washington,* 300 F.3d at 834). In this case, Plaintiff claims that Defendant Spinner destroyed legal documents showing he attempted to exhaust his administrative remedies and that "more than half [of the grievances] were ignored or intercepted" by Defendant Streeter. Pl.'s Mem. of Law at Point Two. Plaintiff's claim raises a matter of credibility but, for the purposes of this Motion, drawing all inferences in favor of Plaintiff, since Plaintiff set forth allegations of affirmative misconduct that could be considered "inhibiting," Defendants shall be deemed estopped from asserting the affirmative defense of failure to exhaust. Since we are considering Defendants actions as inhibiting, again for the purposes of this Motion, the claims will be deemed exhausted.

### D. Eighth Amendment Claims

**9** Plaintiff alleges that Defendants Bass and Trimm were deliberately indifferent to his health and safety when they placed incompatible cellmates or known enemies in Plaintiff's cell. Am. Compl. at ¶ 42. Plaintiff also contends that Defendants Bouyea, Spinner, and Streeter served him spoiled food which caused him psychological harm. *Id.* at ¶ 54.

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain."*Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). To state a claim under § 1983, the inmate "must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not

suffice." *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996).

The Supreme Court has delineated a two-part test for deliberate indifference. First, the "deprivation alleged must be, objectively, sufficiently serious," and "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Hayes v. New York City Dep't of Corr.,* 84 F.3d at 620.

The Eighth Amendment also imposes on prison officials "a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. at 833 (citation omitted). Nonetheless, prison officials may not be constitutionally liable for every injury an inmate suffers at the hands of other inmates. *Id.* at 834. A plaintiff may recovery for injuries received while in custody "if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (quoting *Farmer v. Brennan,* 511 U.S. at 834). The Second Circuit has stated that "[t]he failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment." *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (citing *United States v. Bailey,* 444 U.S. 394, 423 (1980)). However, "[a]n isolated omission to act by the state prison guard does not support a claim under section 1983 absent circumstances indicating an evil intent, or recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent upon him." *Id.* (quoting *Williams v. Vincent,* 508 F.2d 541, 546 (2d Cir.1974)). Instead, "reckless disregard of plaintiff['s] right to be free from attacks by other inmates may be shown by the existence of a pervasive risk of harm to inmates from other prisoners and a failure by prison officials to reasonably respond to that risk." *Knowles v. New York City Dep't of Corr.,* 904 F.Supp. 217, 221-22 (S.D.N.Y .1995) (citing *Rucco v. Howard,* 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993) & *Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984)) (internal quotation marks omitted) (alteration in original). Furthermore, "an inmate

must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference." *Sims v. Bowen,* 1998 WL 146409, at *3 (N.D.N.Y. Mar. 23, 1998). Moreover, there is no constitutional right to the cellmate of a prisoner's choice even if a prisoner is not getting along with his cellmate. *Harris v. Greer,* 750 F.2d 617, 618 (7th Cir.1984).

**\*10** Here, Plaintiff claims a known enemy was placed in his cell. Midalgo states that he filed a grievance expressing his fear that he would be placed with a "known or made for hire enemy" and that on June 27, 2003, he was bunked with a known enemy and a fight broke out where Plaintiff suffered injuries to his face, eye, knees, and tricep. Am. Compl. at ¶¶ 27 & 31. However, Captain Bezio stated in a letter to Midalgo that "there [was] no evidence to indicate that [he] was placed in a cell with a known enemy. A review of facility records reveal[ed] that there [were] no documented enemies of [his] at [the] facility" and that if an inmate should be considered an enemy, Midalgo should contact the assigned Correction Counselor. Defs.' 7.1 Statement, Ex. A, DOCS Lt. from Captain Bezio, dated July 14, 2003. Defendant Trimm also conducted an investigation into the grievance and found that there was no evidence that there was a known enemy placed in Midalgo's cell. *Id.,* Ex. A, Sgt. Trimm Lt. to Captain Bezio, dated July 6, 2003. Even the Superintendent stated that inmates were bunked based on compatibility. *Id.,* Ex. A, Superintendent's Appeal, dated July 15, 2003.

When questioned about how Plaintiff knew there was a known enemy placed in his cell, Plaintiff stated that his "circumstantial evidence clearly proves that [he] was placed in the cell with a known enemy. The timing, the dates, [his] grievances, [his] appeals, the coincidences, everything[.]" Dkt. No. 105, Ex. A., Pl.'s Dep. at p. 63, lines 5-8. He also stated he told his correction counselor he was in danger from "all gang members" but then stated that he did not tell his counselor anything of such nature since "there was no counselor for [him] to speak to" until after the incident occurred. *Id.* at pp. 63, lines 12-14, 64, lines 17-20, & 65, lines 17-23. Plaintiff further stated that the fights he had with his cellmate occurred because his cellmate made "homosexual advances" on him. *Id.* at p. 16, line 14. After that cellmate, Plaintiff had approximately twenty (20) more cellmates because "things weren't working out" and he was fighting with them as well over alleged homosexual advances. *Id.* at pp. 25, lines 11-14 & 30, lines 21-24, & 31, lines

1-11. Plaintiff stated he had "plenty of fights" with other cellmates. *Id.* at p. 31, lines 16-24.

Midalgo has failed to meet the Eighth Amendment standard of deliberate indifference. First, Midalgo must show that he was incarcerated under conditions that posed a substantial risk of serious harm. Plaintiff has stated he fought with many of his cellmates and was injured, especially with his first cellmate whom "Sergeant Bass thought was a rival gang member." Am. Compl., Ex. "Exhaustion of my Administrative Remedies ... [with fight investigation] ...," Fight Investigation Form, dated June. 27, 2003. However, Plaintiff has not shown that the injuries he received were based on the purposeful subjection of Midalgo to a substantial risk of serious harm or by deliberate indifference to the risk. Plaintiff's claims were investigated and found to be without merit as there were no known enemies in the facility. Furthermore, after Plaintiff's fight with his cellmate, they were separated and placed in different cells. *Id.* Moreover, Plaintiff, over time, had numerous cellmates because they were not compatible. Prison officials took appropriate measures to protect Midalgo after the fights by removing the other inmate from the cell. Therefore, Plaintiff has failed to prove that any depravation alleged was serious and that he was incarcerated under conditions that posed a substantial risk of harm.

 **\*11** Even if Plaintiff could satisfy the first prong, Plaintiff clearly fails on the second prong. Midalgo has not shown that the Defendants knew of and disregarded an excessive risk to his health or safety. This is evidenced by the fact that he had nearly twenty other cellmates. He was not forced to bunk with another cellmate for an extended period of time. Even with his first cellmate, he only bunked with him for a month or so. Pl.'s Dep. at pp. 16, lines 12-24, & 17, lines 1-3. Investigations were conducted into the matter and no evidence was found to support Plaintiff's claim that there was a known enemy placed in his cell. Plaintiff also admitted that many of his fights were because he thought other inmates were making homosexual advances towards him. *Id.* at pp. 30, lines 21-24, & 31, lines 1-11. Although there is a duty to protect placed on prison officials, the injuries were not a result of indifference on the part of the officials. Furthermore, Plaintiff did not inform the correction officials of his belief until a fight ensued. *Id.* at p. 65, lines 22-23. Plaintiff seemingly would prefer to choose his own cellmate, however inmates do not possess such a right, and the Superintendent noted that cellmates were chosen based on compatibility.

Plaintiff also claims that Defendants Spinner, Streeter, and Bouyea brought him spoiled or rotten food on several occasions and that from June to September 2003, Defendants Spinner and Streeter served Midalgo "moldy cheese, bread, spoiled milk and rotten fruits ." *Id.* at p. 14, lines 3-6; Am. Compl. at ¶ 28.

The Eighth Amendment places a duty upon prison officials to ensure that prisoners receive adequate food. *Farmer v. Brennan,* 511 U.S. at 832. In that context, prisoners are to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (citation omitted); *see also Lunney v. Brureton,* 2005 WL 121720, at \*6 (S.D.N.Y. Jan. 21, 2005).

Here, C.O. Streeter stated that he did not provide Plaintiff with spoiled food and that meals are inspected and placed on the trays at the messhall and then are further inspected once again by him prior to Plaintiff receiving the food. Defs.' 7.1 Statement, Ex. A, Streeter Lt. to Sgt. King, dated July 20, 2003. The Superintendent found no evidence to support Plaintiff's claim on this issue. *Id.,* Ex. A, Superintendent's Appeal, dated Aug. 6, 2003. Plaintiff admits that the officers do not prepare food trays and that they merely inspect them before they get to Plaintiff. Pl.'s Dep. at pp. 36, lines 19-24, & 37, lines 1-5. Midalgo also stated that while in the normal population, all the meals are sealed but in SHU some items are not sealed, however some do remain sealed such as cheese and meat. *Id.* at p. 38, lines 2-14. Plaintiff further stated that he received expired milk from the correction officers and that Defendants Spinner and Streeter provided spoiled food during breakfast and lunch from June to September 2003. *Id.* at pp. 41, lines 23-24, 42, lines 1-13, 50, lines 16-24, & 51, lines 1-12. On October 10, 2003, Plaintiff received a memo from the Food Services Administrator stating that his kosher meal was prepared in accordance with the guidelines set by the Department of Correctional Services. Pl.'s Mem. of Law, Ex., Inter-Departmental Memo from Haug to Midalgo, dated Oct. 10, 2003. The memo also states that items such as milk and bread are prepackaged and the trays are checked and wrapped with cellophane before they are delivered to the inmates. *Id.* The Superintendent further stated that after an investigation was conducted with the Food Service Administrator, since the food is prepackaged, contact between an officer and the trays are limited. Pl.'s Mem. of Law, Ex. Superintendent's Appeal, dated Oct. 28, 2003. Midalgo states, however, that he had to beg other prisoners

to sell him food so that he "wouldn't starve or get sick" and that as a result he received psychological harm which include "anxiety, nightmares about being poisoned, delusions and dizziness."*Id.* at p. 50; Am. Compl. at ¶ 54.

 **\*12**  Prison officials are required to provide nutritionally adequate meals that are served under conditions which do not present an immediate danger to the health and well being of an inmate. Here, Plaintiff received kosher meals for several years because the food was more healthy than regular food received by the inmates. Pl.'s Dep. at pp. 38, lines 15-24, & 39, lines 1-18. Upstate provided the kosher meals since Plaintiff made the request. *Id.* at p. 39, lines 1-18. Furthermore, Midalgo only stated he received psychological harm from the alleged incident. There was no immediate danger to his health or well being. Plaintiff did not starve nor was he denied meals. He also does not state he had weight loss or anything of the sort which would put his health in immediate danger. He stated that he purchased food from other inmates. Moreover, investigations were conducted into Plaintiff's spoiled and rotten food claims and the claims were found to be unsupported by any evidence as most items were prepackaged and wrapped in cellophane. Moreover, Plaintiff admits that the Defendants he seeks to hold liable had no control over the contents on his foodtrays.

Therefore, it is recommended that the Motion for Summary Judgment on Plaintiff's Eighth Amendment claims be **granted.**

### E. First Amendment Claims

Plaintiff claims that Sergeant Trimm and "her C.O.s" were misplacing or destroying his magazine and newspaper subscriptions and that his outgoing mail/legal mail was read by Defendant Bouyea in order to "play mind games with [Plaintiff]." Am. Compl. at ¶¶ 22 & 46. Plaintiff further alleges that Defendant Bennett purposefully gave him the wrong books and cases and lost legal documents which resulted in frustrating Plaintiff's lawsuit and an inability to file a 440 motion pursuant to New York State's Criminal Procedure Law. *Id.* at ¶ 48.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."*Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). In order to state a claim for lack of access to

the courts by interference with legal mail, "an inmate must allege that a defendant's deliberate and malicious interference actually impeded his access to the court or prejudiced an existing action."*Cancel v. Goord,* 2001 WL 303713, at \*4 (S.D.N.Y. Mar. 29, 2001) (citing *Lewis v. Casey,* 518 U.S. 343, 349 (1996)). However, "[a] delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation."*Cancel v. Goord,* 2001 WL 303713, at \*5 (citing *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995) & *Jones v. Smith,* 784 F.2d 149, 151-52 (2d Cir.1986)). But, if an adverse judgment to an "otherwise meritorious" motion resulted from defendants' delay, then a § 1983 claim is stated. *Id.*

A prisoner maintains the right to the flow of incoming and outgoing mail as protected by the First Amendment. *Davis v. Goord,* 320 F.3d at 351 (citing, *inter alia, Heimerle v. Attorney General,* 753 F.2d 10, 12-13 (2d Cir.1985)). Any "[r]estrictions on prisoners' mail are justified only if they 'further [ ] one or more of the substantial governmental interests of security, order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Id.* (quoting *Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986)) (alterations in original). Therefore, "in balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Id.* (citing, *inter alia, Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989)). Although an inmate has the right to be there when his legal mail is opened, an isolated event of tampering will be insufficient to allege a constitutional violation unless the inmate can show "that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.' " *Id.* (quoting *Cancel v. Goord,* 2001 WL 303713, at \*6);*see also Wolff v. McDonnell,* 418 U.S. 539, 574-76 (1974); *Morgan v. Montanye,* 516 F.2d 1367, 1371 (2d Cir.1975); *Gill v. Riddick,* 2005 WL 755745, at \*15 (N.D.N.Y. Mar. 31, 2005).

 **\*13**  With regard to non-legal incoming mail, a prison's "regulations or practices affecting a prisoner's receipt of non-legal mail must 'be reasonably related to legitimate penological interests[.]' " *Cancel v. Goord,* 2001 WL 303713, at \*6 (quoting *Thornburg v. Abbott,* 490 U.S. 401, 409 (1989)). "[P]rison security is a sufficiently important governmental interest to justify limitations on a prisoner's [F]irst [A]mendment rights." *Id.* (quoting *Gaines v. Lane,* 790 F.2d 1299, 1304 (7th Cir.1986)). In order to state a claim for

interference with incoming non-legal mail, the inmate will have to show a pattern and practice of interference without the legitimate penological interest. *Id.*

With regard to Plaintiff's legal mail being read, Plaintiff states that C.O. Bouyea "mumble[d] something similar to what [Plaintiff] wrote in [his] legal mail under his breath."Am. Compl. at ¶ 26. Bouyea purportedly repeated "something verbatim to a letter" Midalgo had written to a legal organization and that there were similar occurrences on several occasions. Pl.'s Dep. at pp. 39, lines 19-24, & 40, lines1-6. Plaintiff claims that Bouyea whispered so that only Plaintiff could hear the statements. *Id.* at p. 40, lines 19-23. When Plaintiff was asked about the statement made in his Amended Complaint that "outgoing mail/legal mail was being read due to a fabricated penological interest" Midalgo stated that he believed his mail was read because he "agitated [the facility's] security interest and that ... gave them a reason to read [his] mail and things [he] was writing in [his] mail."*Id.* at p. 83, lines 3-8. Another reason Plaintiff believed the mail was read was because the inmates who became his cellmates "would try to start a whole situation based on letters" that Plaintiff had written. *Id.* at p. 83, lines 9-12. Plaintiff had submitted a grievance about his legal mail and it was found to have no merit and that there was no evidence to support his complaint. Defs.' 7.1 Statement, Ex. A, Sgt. King Lt. to Captain Bezio, dated Aug. 1, 2003; Ex. A, Superintendent's Appeal, dated Aug. 6, 2003.

Here, Plaintiff has failed to show that there was interference with his legal mail. Plaintiff has not alleged any deliberate and malicious interference that actually impeded his access to the courts nor prejudiced an existing action. Plaintiff also provides no proof that his mail was read except that he states Defendant Bouyea was mumbling under his breath something similar to what had been written in Plaintiff's letters. Moreover, Midalgo has not shown that Bouyea opened and read his mail on a regular and unjustifiable basis.

Plaintiff further states he was not receiving his magazine and newspaper subscriptions and that Defendant Trimm "was aware that her C.O.s were purposefully misplacing [his] magazines and newspaper subscription" or providing them to other inmates. Am. Compl. at ¶ 22; Pl.'s Dep. at p. 34.Midalgo says he knew some of his magazines that were in the "rec room" were his because he saw his name on the label. Pl.'s Dep. at p. 34, lines 2-4. He also stated he wrote to the mail clerk to inquire about his mail, the mail clerk told him that magazines were given to the correction officers to be handed

out, that they were not delivered to him. *Id.* at p. 34, lines 8-12. Then when Plaintiff spoke to Sergeant Trimm about the situation, she gave him "a devious smile and wrote something out on a pad and said she would look into it and she never did."*Id.* at p. 34, lines 16-19.

**\*14** In regards to the non-legal mail, Plaintiff does have a right to incoming, non-legal mail, although to a lesser extent than legal, outgoing mail. *See Davis v. Goord,* 320 F.3d at 351. Plaintiff would have to show a pattern and practice of interference without a penological interest or purpose. Midalgo makes the general claim that he did not receive his subscriptions for several months. In a letter to the Warden, Plaintiff provides the names of five different magazines which were not delivered to him. Plaintiff only submitted two letters to the Court that were sent to two different magazine companies stating he needed to cancel his subscriptions due to his failure to receive the magazines. Am. Compl., Ex. C, Lt. to Warden, dated Feb. 4, 2003; Lts. to F.H.M. & Maxim, dated Apr. 21, 2003. Midalgo also states he received one issue per each subscription. Lts. to F.H.M. & Maxim, dated Apr. 21, 2003. Plaintiff states he received one issue of Maxim after it had gone through the procedure of media review. Pl.'s Dep. at pp. 34, lines 20-24, & 35, lines 4-12. Despite the letters, Plaintiff has not shown that there was a pattern and practice in not receiving his subscriptions. Plaintiff has not stated with any specificity which magazines he did not receive and, more importantly, for what time periods he did not receive them. *See* Am. Compl. at ¶¶ 22-24; Pl.'s Mem. of Law at Point Five. Plaintiff merely makes a generalization that from January 2003 until he cancelled his subscriptions, his magazines and newspapers were misplaced and that several months had passed without receiving any subscriptions. Am. Compl. at ¶¶ 23 -24. More to his detriment, Plaintiff does not state which officers misplaced or destroyed his magazines nor does he show that there was a practice of this by the Defendants. [14] Therefore, Plaintiff has failed to state a claim on his non-legal, incoming mail.

In addition, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Even if the Court were to draw all inferences in favor of Plaintiff that a pattern and practice has been established, Plaintiff has failed to allege the personal involvement of Defendant Trimm or any other Defendant. Furthermore, to the extent Plaintiff states that Defendant Trimm would be liable in a supervisory capacity, Plaintiff has

failed to show what supervisory position Defendant Trimm holds as to the corrections officers who may have misplaced or destroyed his magazines.

Plaintiff further makes the claim that he received the wrong books and cases from the law library or that he never received the books requested. *Id.* at ¶ 48.Midalgo also alleges that his legal documents were lost and he was unable to file court documents as a result. *Id.*

Under the First Amendment, "prisoners have a constitutional right of access to the courts."*Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Bourdon v. Loughren,* 386 F.3d 88, 92 (2d Cir.2004). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."*Bounds v. Smith,* 430 U.S. at 828; *Bourdon v. Loughren,* 386 F.3d at 92 (quoting *Bounds).* However, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."*Lewis v. Casey,* 518 U.S. at 351. The Supreme Court held that in order to fulfill the actual injury requirement, derived from the constitutional doctrine of standing, on a law library claim where there is a lack of access to the courts, the inmate must be pursuing direct appeals from the conviction for which he or she was incarcerated, a *habeas corpus* petition, or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights." *Lewis v. Casey,* 518 U.S. at 354.

**\*15** As to Plaintiff's law library claim, in regards to some of the books Midalgo sought, he received a letter stating that the law library was not required to carry two of the books he requested and that the other book should have been available and if it was missing, then a replacement would be ordered. Am. Compl., Ex. D, Lt. from Litzenberger, dated July 28, 2003. Then Plaintiff wrote two letters noting that the library staff was refusing to provide him with a law book, that he had been told that two books were not available at the facility, and that he was receiving the wrong books and cases from the law library. *Id.,* Exs. D, Lt. to Botta, dated Aug. 3, 2003 & Ex. C, Lt., dated Aug. 4, 2003. However, Plaintiff received a memo noting that an investigation had been completed and that the staff had acted properly. *Id.,* Ex."Exhaustion of my Administrative Remedies Some Material Lost ...," Mem. from Captain Racette, dated Aug. 5, 2003. Midalgo also received a letter from C.O. Bennett whereby Plaintiff was told

that one book he had requested was available but that because Plaintiff was in SHU and since the book was looseleaf, he could request a photocopy of the materials. *Id.,* Ex. D., Lt. from Bennett, dated Aug. 19, 2003. However, Plaintiff claims that the book was not in looseleaf and that Defendant Bennett had lied and then stated the book was missing after Plaintiff claimed that all he received was the index. Pl.'s Dep. at pp. 78, lines 14-24, & 79, lines 1-3. Plaintiff alleges that every book he requested from the law library was missing and that one book that he did receive had a section ripped out that Plaintiff needed. *Id.* at p. 85, lines 1-18. However, Plaintiff states that he would not say it was Defendant Bennett's fault but that it is his duty to oversee the law library. *Id.* at p. 86, lines 18-24.

Additionally, Plaintiff states that he was trying to find out how to copyright some of his poetry. *Id.* at p. 74, lines 22-23. Midalgo further acknowledges he was trying to file a N.Y. CRIM. PROC. LAW 440 motion because he claims he was wrongfully convicted and that he is still unable to file the motion because he received the wrong books and cases. *Id.* at pp. 74, line 24, & 75, lines 1-20. Plaintiff claims that he sent legal documents, which were exhibits Plaintiff wanted to attach to his 440 motion, to the law library to be copied, but that they were never returned even though the request was made. *Id.* at pp. 79, lines 16-24, & 80, lines 1-8. As a result, Plaintiff claims that this was another reason why he was unable to file the motion. *Id.* at p. 80, lines 1-5. Midalgo stated that he did not file the 440 motion prior to arriving at Upstate because he had been studying the process and procedures. *Id.* at p. 81, lines 18-21. Plaintiff alleges that if not Defendant Bennett, then either Defendants Streeter or Spinner lost his copies because "[t]hey colluded together" and conspired against Plaintiff. *Id.* at pp. 87, lines 10-24, & 88, lines 1-4. Midalgo avers that his claim could be proven by "circumstantial evidence," which would include his grievances and hearings. *Id.* at p. 88, lines 7-17.

**\*16** Here, Plaintiff does have a constitutional right to the access of the courts and, in turn, the right to an adequate law library or assistance from those trained in the law when preparing and filing legal documents. Plaintiff does not state a claim as to the availability of books he sought for the purposes of his copyright lawsuit. *See Lewis v. Casey,* 518 U.S. at 354. Plaintiff does state a claim in regards to the missing books and copies of exhibits to his 440 motion as he seeks to challenge his conviction, which would provide standing as it would be a direct appeal from the conviction for which he was incarcerated. *See id.*

However, the Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). In this case, as only Plaintiff's law library claim as to his 440 motion could proceed, Plaintiff has failed to allege any personal involvement on the part of any of the Defendants. Plaintiff states that Defendant Bennett was not at fault for the missing books. That statement belies the notion that there was any personal involvement. In addition, Plaintiff fails to state a claim for supervisory liability against Defendant Bennett for the missing books as Plaintiff does not state which Defendants Bennett was supervising. Furthermore, as to the missing copies of exhibits for the 440 motion, Plaintiff merely claims that Defendants Bennett, Streeter, and Spinner were involved because he believes there was a conspiracy. That allegation does not constitute personal involvement.

Therefore, it is recommended that the Motion for Summary Judgment be **granted** on the First Amendment claims.

### F. Inadequate Visitation

Plaintiff alleges that Defendant Trimm delayed his visit with his mother for several hours causing him emotional distress. Am. Compl. at ¶ 50.

"Although inmates do not relinquish their constitutional rights when imprisoned, implicit with incarceration is the fact that confinement imposes a limitation on privileges and rights." *Henry v. Coughlin,* 940 F.Supp. 639, 642 (S.D.N.Y.1996) (citing, *inter alia, Sandin v. Conner,* 515 U.S. 472, 485 (1995)). Restrictions that are placed upon an inmate's constitutional rights "may be upheld as long as they are 'reasonably related to legitimate penological interests.' " *Hernandez v. McGinnis,* 272 F.Supp.2d 223, 226 (W.D.N.Y.2003) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). However, family visitations for inmates only constitute a privilege and not a right. *See Block v. Rutherford,* 468 U.S. 576, 589 (1984); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125-26 (1977) (holding that one of the more obvious constitutional rights curtailed by confinement is the right to freely associate with those outside the penal institution); *see also Lynott v. Henderson,* 610 F.2d 340, 342 (5th Cir.1980) (stating that "[c]onvicted prisoners have no absolute constitutional right to visitation"); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir.1975) (holding that a "[prisoner] has no constitutional right to physical contact with his family"); *Hernandez v. McGinnis,* 272 F.Supp.2d at 227.

**\*17** Here, Plaintiff does not claim that he was denied visitation nor has he stated that visitation was delayed at any other time than the one time alleged. He merely states that a visit with his mother and brother was delayed by a few hours. Am. Compl. at ¶ 25. As there is no constitutional right to visitation and because of the fact that Plaintiff did actually receive visitation that same day, Plaintiff has failed to state a claim.

Therefore, it is recommended that the Motion for Summary Judgment be **granted** as to the visitation claim.

### G. Harassment

Plaintiff claims that Defendants Trimm and Bass harassed him by placing a wiretap in his cell as well as confidential informants and/or hired help in order to cause him physical and psychological harm. [15] Am. Compl. at ¶ 52.

In terms of the wiretap, the claim would turn on whether a plaintiff had a legitimate expectation of privacy with respect to his conversations. To assess the expectation, "the person asserting a privacy interest must demonstrate a subjective expectation of privacy." *George v. Carusone,* 849 F.Supp. 159, 165 (D.Conn.1994) (citing *California v. Greenwood,* 486 U.S. 35, 39 (1988)) (further citations omitted). Then "that person's subjective expectation must be one that society accepts as reasonable." *Id.* (citing *California v. Greenwood,* 486 U.S. at 39) (further citations omitted). The Second Circuit has held that "a convict has no expectation of privacy in his prison cell" because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a [prisoner] might have in his prison cell[.]" *Willis v. Artuz,* 301 F.3d 65, 66, & 69 (2d Cir.2002) (citing *Hudson v. Palmer,* 468 U.S. 517, 526 (1984)).

Here, besides alleging that a wiretap was placed in his cell, Plaintiff does not provide a shred of evidence that there was actually a wiretap placed within his cell. Plaintiff sets forth certain circumstances, which to him seem like too much of a coincidence that a wiretap had to have been placed in his cell. Pl.'s Mem. of Law at Point Eight. Plaintiff merely states that he **thought** there was a wiretap because his cellmate

attempted to talk about illegal activity and that his neighbor was trying to get Midalgo to bring back drugs. Pl.'s Dep. at p. 15, lines 13-17. He also stated the lights would flicker and that some of the officers would talk about the same things Midalgo and his cellmate had discussed. *Id.* at p. 15, lines 18-24. Even though Plaintiff does not have an expectation of privacy in his cell, Plaintiff fails to allege any facts that are not general or conclusory as to state any claim in regards to the alleged wiretap.

With regard to his claim of a confidential informant or hired help being placed in his cell to harass him, Plaintiff states that he believes his cellmate was a confidential informant because Officer Bouyea, Officer Streeter, and others gave the cellmate extra food trays, magazines, and books. Pl.'s Dep. at pp. 17, lines 4-12 & 29, lines 4-10. Other than supposition, Plaintiff has not provided any proof or evidence that his cellmate was a confidential informant. Midalgo's claims are merely conclusory and unsupported by any facts. Furthermore, the Superintendent stated that inmates are placed together based on compatibility. Defs.' 7.1 Statement, Ex. A, Superintendent's Appeal, dated July 15, 2003. Plaintiff has not stated any type of claim available and moreover, Plaintiff would not have any choice in who was placed within his cell as inmates do not a have a constitutional right to the cellmate of their choice. *Harris v. Greer,* 750 F.2d 617, 618 (7th Cir.1984).

**\*18** Therefore, it is recommended that the Motion for Summary Judgment be **granted** on his claim.

### H. John Doe Defendant

As noted previously, Defendant John Doe has not been identified or appeared in this action. *See* Dkt No 12. FED.R.CIV.P. 4(m) states that "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, then the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to

that defendant or direct that service be effected within a specified time[.]" Furthermore, pursuant to the Local Rules for the Northern District of New York, "service of process [is required] upon all defendants within sixty (60) days of the filing of the complaint." N.D.N.Y.L.R. 4.1. Plaintiff's time for service on John Doe has expired, per both the Local Rules and the Federal Rules, as the date of the filing of the Amended Complaint was October 24, 2003. *See* Dkt. No. 8. Since Plaintiff has failed to properly identify this Defendant, such claims should be dismissed.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Motion for Summary Judgment (Dkt. No. 105) be **GRANTED;** and it is further

**RECOMMENDED,** that all claims against the John Doe Defendant be **DISMISSED** due to Plaintiff's failure to timely identify and serve such Defendant; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED.CIV.P. 72, 6(a), & 6(e).

### All Citations

Not Reported in F.Supp.2d, 2006 WL 2795332

Footnotes

1    Defendant John Doe has not been identified and therefore has not been served with the Amended Complaint or otherwise appeared in this action. *See* Dkt No 12.

2    Plaintiff mistakenly spells Defendant Bennett's name as "Bennet." *See* Dkt. No. 23, Answer at n. 1. The Court will refer to this Defendant by the proper spelling.

3    Plaintiff's response to the Motion for Summary Judgment fails to comport with the requirements of the Local Rules for the Northern District of New York. Plaintiff only submitted a Memorandum of Law and some Exhibits but did not provide

a Statement of Material Facts as required. *See* N.D.N.Y.L.R. 7.1(a). Normally, if no Statement of Material Facts are filed, Defendants' Statement of Material Facts are deemed admitted. N.D.N.Y.L.R. 7.1(a)(3). This Court, nonetheless, will proceed to decide this Motion with the aid of Defendants' Statement of Material Facts with accompanying Exhibits and Plaintiff's Verified Amended Complaint with Exhibits. Although no exhibits were attached to the Amended Complaint on the Docket Report, attachments were available with the Original Complaint and will hereby be incorporated into the Amended Complaint. *See* Dkt. Nos. 1 & 8.

4   Plaintiff does not provide any specific dates as to when he received rotten or spoiled food.

5   It is unknown to this Court whether a response from the Superintendent was received.

6   The CORC also stated that no grievances were received by the IGRC in April or May 2003, as Plaintiff has alleged he filed grievances during those months. Defs.' 7.1 Statement, Ex. A, CORC Appeal, dated Oct. 1, 2003; Am. Compl., Ex. A; *see also supra* p. 3.

7   It is unclear to this Court as to which cellmate Plaintiff referred to as a known enemy in the grievance.

8   Once again, the CORC noted that IGRC had not received grievances on April 26 or June 21, 2003, as Plaintiff has alleged he filed grievances on those dates. Am. Compl. at ¶ 27; Defs.' 7.1 Statement, Ex. A, CORC Appeal, dated Aug. 20, 2003.

9   Jean Botta is not named as Defendant in this action.

10   "D.S.G. Kiebert" is also not named as a Defendant in this action.

11   As to Plaintiff's medical care claim, Plaintiff may have grieved his medical care issues. *See* Am. Compl., Ex. "Exhaustion of my Administrative Remedies Some Material Lost ...," Grievance, dated Aug. 13, 2003. However, since the Eighth Amendment medical indifference claim is against the John Doe Defendant who was never identified nor appeared in this action, the issue will not be addressed further.

12   N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8 states: "[t]ime limit extensions may be requested at any level of review, but such extensions may be granted only with the written consent of the grievant. Absent such extension, matters not decided within the time limits may be appealed to the next step."

13   As Exhibits to their 7.1 Statement, Defendants include grievances filed by Plaintiff on April 27, 2004, and May 20, 2004, which clearly were submitted after the filing of the Amended Complaint.

14   The Court also notes that the Defendants fail to address whether or not there was a penological interest in the regulations or practices that may have affected Midalgo's receipt of non-legal mail. *See* Defs.' Mem. of Law.

15   Although Plaintiff does not specify what aspect of the Constitution was violated, though Plaintiff does insert a short sentence saying Defendants were deliberately indifferent, this Court will analyze the wiretap claim pursuant to the Fourth Amendment. *See* Am. Compl. at ¶ 52.

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.